## NALLY vs. NALLY et al.

1. An unmarried man took out a policy of insurance on his life, one condition of which was: "This policy is issued and accepted upon the express condition that the assured may, with the consent of the company, at any time assign it, or, before assignment, change the beneficiaries therein, or make any other change." The person

---

*On the question of what is a sufficient assignment of error, both where motions are made and where direct exception is taken from a trial, see 43 Ga., 438; 44 Id., 16 . 69 Id., 729 ; 57 Id., 450 ; 61 Id., 495 ; 16 Id., 96 et seq., 72 Id., 637 ; 73 Id., 670. Contra, see Hall et al. vs. Huff et al. and Mayor, etc., of Brunswick vs. Moore, ante, p. 409, 60 Ga., 407 ; 73 Id., 125, 149 ; 72 Id., 98, 205, 353 ; Willingham vs. Veal, Feb. Term, 1885, (REP.)

named as the beneficiary was the sister of the assured, and to her he delivered the policy, and paid the premiums to that time. Subsequently he married, and, as an inducement thereto, he agreed that if the woman would marry him, she should be made the beneficiary of the policy. After the marriage, and when the next semi-annual premium fell due, the assured paid it, on condition that the beneficiary should be changed from his sister to his wife. The sister had the policy and would not give it up. The agent was uncertain whether the change could be made without the policy, but promised to notify the company and have the change made if possible. The officers agreed to attend to the matter but overlooked it. After the death of the assured, the company filed a bill to require the wife and sister to interplead and have the question determined as to who was entitled to the money :

*Held,* that the gift to the sister was not perfected, so as to be absolute and irrevocable, and the assured had the right to change the beneficiary of the policy.

2. Marriage is a valuable consideration, and an innocent purchaser on such a consideration will be protected.

(*a.*) There is no condition in this policy requiring the consent of the beneficiary named therein to a change of any of its terms or of the parties entitled to claim under it; and whether such change was to be effected by parol or in writing was a matter entirely between the assured and the company; and if the latter chose to dispense with any of the modes of effecting this purpose, this concerned no third party; nor could the company capriciously refuse the change.

(*b.*) The marriage having been consummated on the inducement of the promised change of the beneficiary under the policy, equity considers that done which ought to be done, and will give relief accordingly.

April 2, 1885.

Insurance. Husband and Wife. Contracts. Gifts. Equity. Consideration. Before Judge HAMMOND. Fulton Superior Court. September Term, 1884.

Reported in the decision.

SPEAIRS & SIMMONS ; HILLYER & BRO. ; HOKE SMITH, for plaintiff in error.

MYNATT & HOWELL ; J. R. SAUSSY ; J. M. McAFEE, for defendants.

HALL, Justice.

The contest in this case is between a gratuitous benefi-
ciary named in a policy of insurance; and one who claims
that she was entitled, for a valuable consideration, to-wit,
an agreement with the assured entered into prior to her
marriage with him, to its benefit, in lieu of the volunteer
named therein as such beneficiary.  Among other condi-
tions upon which the policy issued was this:

" Eighth. This policy is issued and accepted upon the express con-
dition that the assured may, with the consent of the company, at
any time assign it, or, before assignment, change the beneficiaries
therein, or make any other change."

The assured was an unmarried man when he took out
the policy; the person named as beneficiary therein was
his sister, to whom he delivered the policy; he paid the
premiums.   Subsequent to this, he married the other
claimant of the fund, with whom, before their marriage, he
agreed that, if she would marry him, she should be made
the beneficiary thereof, and it was satisfactorily shown,
and not controverted, that this contract, which was an in-
ducement to the marriage, was made. After this, and on the
day before the second semi-annual premium on the policy
fell due, the marriage was solemnized.   The assured sought
out the agent of the company, and paid this premium, upon
the condition that the beneficiary should be changed from
his sister to his wife.   The sister had the policy and would
not give it up, because she was angry with the assured for
having married   Without the policy, the agent was uncer-
tain whether the desired change could be made, but prom-
ised to report this direction to change the beneficiary to
the officers of the company, and if possible to have the
change made.   He complied with his promise so far as to
communicate the direction of the assured to the officers of
the company, and requested them to attend to the matter,
which they agreed to do.   They, however, overlooked it,
and nothing further seems to have been done until the

death of the assured, which occurred before the next premium fell due; both the wife and the sister claimed the amount specified in the policy The company filed its bill, calling upon them to interplead; it paid the money into court, and they were decreed to litigate the matter between them; this issue was by consent tried by the judge without a jury, and he decreed the fund to the sister. The wife excepted to the decree, and brought the case to this court by writ of error. The controversy between the parties turns mainly upon the questions whether the sister, though a volunteer, held under a completely executed gift, and whether the change as to the beneficiary could be made without her consent and that of the company, expressed in writing, although the agreement to make it was founded upon a consideration of the highest value

1. Was the gift to the sister perfected by the delivery of the policy to her, together with the receipts for the premiums paid prior to the contract entered into between the assured and his wife, which was an inducement to their marriage? Was the donation to the sister, under all these circumstances, irrevocable? Did the assured thereby deprive himself of the power either of assigning the policy, or of substituting for her another beneficiary? Was such his intention; and if so, was that intention communicated to the woman, who afterwards became his wife, upon the faith of his promise that she should have the benefit of this insurance?

To constitute a valid gift, there must be the intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by the law in lieu thereof. Code, §2657. Actual manual delivery is not always essential to the validity of a gift, but the act from which it is inferred must indicate renunciation of dominion by the donor and the transfer thereof to the donee (*Id.*, §2660); and while it is true that where the law requires a conveyance in writing to the validity of a gift,

or the conveyance is made for a good consideration, the delivery of the article itself may be dispensed with, yet it is likewise true that it must be executed and delivered befroe it will dispense with the necessity of a delivery of the article given. *Id.*, §2659. If it is equivocal in its terms as to the renunciation of dominion, or if it contains a condition reserving the right to the donor to resume or change the possession, then the written conveyance, founded upon a good consideration, would not, upon well settled principles, constitute a good and perfect gift, entitling the donee to the specific execution of the contract. It would, in this respect, be executory, and could not be enforced in favor of a volunteer. Equity never interferes in favor of volunteers, except where the contract is actually executed (Code, §3116), and will never decree the performance of a voluntary agreement, or merely gratuitous promise, unless the volunteer has gone into possession, and upon the faith of the agreement has incurred expense in making improvements of the property donated, or has done something of a similar nature which would render it inequitable upon the part of the donor not to carry out the contract. Code, §3189, and citations. The donee must not be placed in a worse condition than she was before the gift was tendered. These provisions of our Code are obviously the annunciation of the established principles of equity, as will appear from the following authorities: Ellison *vs.* Ellison, 6 Ves., 656 ; 1 White and T. Lead Cas., marg. p. 167, in which it was held that "the assistance of the court cannot be had without a consideration to constitute a party a *cestui que trust*, as upon a voluntary covenant to transfer stock, etc., but if the legal conveyance is actually made, constituting the relation of trustee and *cestui que trust*, as if the stock is actually transferred, etc., though without consideration, the equitable interest will be enforced." This distinction is fully maintained throughout the numerous cases set forth in the notes, both English and American, to White and Tudor's Leading Cases, *ut*

*supra*, and is recognized and enforced by text-writers of authority.

Had the assured not reserved the right to change the beneficiary in this policy, and had he paid up all the premiums due or to become due before he delivered it to her, and had there been nothing further to be done by him in order to its perfection, then perhaps it might have been deemed a completely executed trust; but such was not the case : she took the policy subject to the conditions stipulated upon its face; she had no right to restrict his selection of another beneficiary, and no power to compel him to continue the life of the policy by paying the premiums as they fell due; his failure to meet one of these would have put an end to the contract and would have terminated the conditional trust which he had created for her benefit; nor could she have prevented the forfeiture of the policy by paying the premiums against his wishes and when he forbade her doing it.

2. That marriage is a valuable consideration, and that an innocent purchaser on such a consideration will be protected even against a subsequent *bona fide* purchaser, seems too plain to require comment. Code, §§2741, 1782. Equity at least will never lend its aid to disturb such a purchaser. Code, §§3092, 3119. It will assist but never disarm him; and even though a title be obtained by fraud and be voidable as to parties whose rights were originally affected by it, it will be protected in a subsequent *bona fide* vendee who had no notice of the fraud. *Id.*, §2640. A striking instance of the application of this principle is afforded by the case of Verplank *et al. vs.* Sterry *et ux.*, 12 Johns. R., 536, in which it was held that a deed, voidable in its inception on account of fraud and covin, might be rendered valid by matter *ex post facto*, as where a grantee in a voluntary deed gained credit by the conveyance, and a person was induced to marry her on account of the provision made for her in the deed ; the conveyance, on the marriage, ceased to be voluntary and became good against

a subsequent *bona fide* purchaser for value, and this, whether any particular marriage was in contemplation at the time of the voluntary settlement, or the grantee married without the consent of her father, the grantor. This decision was in favor of the husband, but the rights of the wife stand upon the same equity. Marriage articles will be executed only at the instance of the wife or husband and other persons coming within the scope of the marriage consideration; but when executed at their instance, the court may also execute them in favor of volunteers, and all persons are volunteers except the parties to the contract and the offspring of the wife. Code, §1781.

There is no condition in this policy requiring the consent of the beneficiary named therein to a change of any of its terms or of the parties entitled to claim under it, whether such change was to be effected either by parol or by a written instrument; this was a matter entirely between the assured and the company, and if it chose to dispense with any of the modes to effect this purpose, this concerned no third party. The company does not insist upon a rigid compliance with the forms prescribed in the policy; and even if it had capriciously withheld its consent to the alteration which the assured desired to have made, and for which he received a valuable consideration, it is hardly to be questioned that it would be compelled, at the suit of the wife, to perform this contract specifically. Even in the case of a parol contract for the conveyance of land, specific performance will be decreed, if the defendant admits the contract, or if it be so far executed by the party seeking relief, and at the instance or by the inducements of the other party, that if the contract be abandoned he cannot be restored to his former position. Full payment alone, which has been accepted by the vendor, is such part performance as entitles the opposite party to a specific execution of the contract. Code, §3187. In this instance, it would be impossible to restore the wife to her former position, if the contract were abandoned. She

has paid, and the assured has accepted, the full considera-
tion agreed on for the benefits to be derived from this policy.
Equity considers that done which ought to be done, and
directs its relief accordingly.    Code, §3086.    It would be
difficult to conceive a case which more imperatively de-
manded the advantages flowing from the application of
this most just maxim than the present    Such being the
view we entertain of the law applicable to the uncontro-
verted facts of this case, we are constrained to the conclu-
sion that the money arising from this policy belonged to
the wife and not to the sister of the assured, and that
there was error in decreeing otherwise.    It will be per-
ceived that we place this decision solely upon questions
of law, and that, in our view of the case, there was no
necessity for a motion for a new trial in order to raise the
points in dispute.

Judgment reversed.