CHARLES Q. DEATON v. GLOUCESTER LUMBER COMPANY.

(Filed 13 May, 1914.)

1. **Master and Servant—Negligence—Res Ipsa Loquitur—Trials—Evidence—Questions for Jury—Nonsuit.**

   The plaintiff was engaged by the defendant lumber company at a cut-off saw arranged upon two upright pieces of timber which moved to and fro as the saw was being operated, so that when not in use the saw rested in a hood about 12 or 14 inches from the perpendicular, and was drawn forward against the lumber to be cut. It was the plaintiff's duty to guide this lumber to be cut over rollers from the main saw, and while doing this, at the time in question, it became necessary to straighten a piece of timber, and the saw, which had been placed back in the hood, and which should have remained there, unexpectedly sprang forward and inflicted the injury complained of: *Held,* the doctrine of *res ipsa loquitur* applies, under the circumstances, raising an inference of negligence which was for the defendant to explain or disprove.

2. **Master and Servant—Assumption of Risks.**

   The servant engaged in a dangerous employment may not be held to have assumed the risk arising from the distinct and negligent act of the master causing personal injury to him while in the performance of his duties.

APPEAL by defendant from *Justice, J.,* at November Term, 1913, of HENDERSON.

This is a civil action. The following issues were submitted to the jury:

1. Was the machinery by which the plaintiff alleges he was injured constructed in a reasonably safe manner, and was the same in a reasonably safe condition at the time of the alleged injury? Answer: No.

Deaton *v.* Lumber Co.

2. Did the defendant provide a reasonably safe place for the plaintiff in which to work?　Answer: No.

3. Did the plaintiff, with full knowledge of the condition of defendant's machinery and condition of the place provided in which for him to work, assume the risk of his employment? Answer: No.

4. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint?　Answer: Yes.

5. Did the plaintiff, by his own carelessness and negligence, contribute to his own injury?　Answer: No.

6. What damage, if any, is the plaintiff entitled to recover? Answer: $3,000.

From the judgment rendered, the defendant appealed.

*Smith & Shipman for plaintiff.*
*Welch Galloway and McD. Ray for defendant.*

Brown, J.　The defendant insists that, taken in its most favorable light, the evidence of the plaintiff did not make out a case of negligence against the defendant, and that the motion to nonsuit should have been allowed.　This assignment of error substantially covers the case, and we do not think that any other needs discussion.

The evidence offered for the plaintiff tended to prove that he was employed by the defendant to operate a cut-off saw, which was installed at right angles to a table on which were placed live rollers, over which slabs, sills, etc., were conveyed from the main saw, which was 30 feet from the cut-off saw; that it was the duty of the plaintiff to use the cut-off saw in cutting the slabs as they came over the rollers from the main saw, and to guide and direct the passage of the sills and other lumber over the rollers, past the cut-off saw, where it emptied into a dock several feet beyond; that this table was, at the point of the cut-off saw, just in front of the shield in which the cut-off saw rested when not in use, and timbers could not be conducted past the cut-off saw when it was out of the shield.

The saw was set in a frame of two upright pieces of timber, 14 feet in height, and which moved to and fro as the saw was

operated; the saw was operated by a lever which the operator pulls to bring it forward out of the shield for use, and which he pushes to put it back into the shield; the saw frame, when the saw is at rest in the shield, is about 12 or 14 inches beyond the perpendicular, and is held by its own weight; fastened to the top or near the top of the saw frame is a rope, which runs over a pulley and reaches downward some 8 or 10 feet, with a weight attached to the end of it; there is another rope fastened to the bottom of the mill floor, which extends down some 8 or 10 feet and is also fastened to the weight.

This arrangement is such that the weight rests on the rope fastened to the floor at all times, except when the saw is pulled forward past the perpendicular. When the saw is being pulled forward, it gets the benefit of the weight after it reaches the perpendicular, and when being pushed back into the shield has the benefit of it until it reaches the perpendicular. When the saw is at perpendicular, and before it is affected by the weight, it is some 12 or 14 inches out of the shield.

The plaintiff testified further as to the manner in which he was injured, namely, that on the morning of the injury, and just before it occurred, he had been operating this slab or cut-off saw in cutting slabs; that just before he was hurt he had pushed the saw back into the shield, until it was at complete rest, and at the time of his injury was engaged in guiding an 8 x 10 sill over the rollers; that the sill was coming at an angle on the rollers, and that he was straightening it—"pushing with his left hand and pulling with his right"; that while he was thus engaged in guiding the sill, the saw sprang forward out of the shield and injured his right hand in the manner testified to by him; that there was nothing to keep the saw from coming forward; that he had observed the manner in which the weight and ropes were arranged about two days before his injury, when he and Colburn, the foreman, were down on the dock; that he called Colburn's attention to it, and that Colburn stated to him that that was the only way to fix it, and that there was no danger; that the saw came out of the shield as far as it could without being affected by the weight when it cut his hand; that he

DEATON *v.* LUMBER CO.

did not see any use of the rope attached to the floor; that he had never been instructed to stop the rollers when guiding sills or lumber when the saw was back in the shield.

The defendant's witness Colburn, in testifying as to the construction of the saw, stated: "The saw frame, which is about 14 feet high, made of two upright timbers, leans back about 14 inches beyond perpendicular when it is as far back as it will go, and when it goes forward it does not affect the weight until it about reaches perpendicular, and when the saw is about 12 or 14 inches out of the shield."

We think that this version of the testimony would justify the jury in drawing the inference of negligence in the manner in which the saw had been placed in its bearings.

The manner in which the saw unexpectedly sprang out of the shield and injured the plaintiff, in the way testified to by him, is very conclusive evidence that there was something unusually wrong with it, and presents a case where the doctrine of *res ipsa loquitur* will carry the case to the jury.

In this case the facts and circumstances attending the injury speak for themselves, and in the absence of explanation or disproof give rise to the inference of negligence. It is evident that the accident would not have occurred if the saw had not unexpectedly sprang out of its protecting shield. Why it did so is not very clear, but the circumstance falls upon the defendant for explanation.

In respect to those assignments of error relating to the issues of assumption of risk and contributory negligence, they are immaterial and need not be considered. The plaintiff assumed no risk growing out of the negligence of his employer, and only those risks which were naturally incident to the proper conduct of the business. As to contributory negligence, we find no evidence upon which any such finding could be based.

Upon a review of the whole record, we find

No error.