Plaintiff alleged that while in the service of the defendant, as a dogger at the sawing machine, the hammer-dog fell and broke the saw into pieces and he was severely injured on his arm and hand by the flying pieces of the broken saw, which was the result of the defendant's negligence in having for his use a defective machine.
Plaintiff Robert K. Dunn in his own behalf testified: "About I November, 1913, I was employed as a millwright by the Roper Lumber Company, and have been for about eighteen months at their new Bern mill, and on that date i was taken and put on the saw carriage. I was dogging on the carriage by direction of the foreman, C. H. Barrow. The dog on the carriage is used for holding the logs to keep them from going off when sawing and cutting them up. The dog works by a lever that throws in the dog when the log first goes on the carriage, to keep the log from rolling off; that is the hammer-dog. The carriage is about 18 feet long and runs by steam backwards and forwards as the saw goes through the log and cuts it up. The saw they were using was one they picked and brazed and fixed it up. It was a double band saw. I was standing in my place holding the lever to keep the log from rolling off the carriage, and while I was doing that I happened to see the *Page 179 
hammer-dog falling. I had both hands on the lever holding the log to the block; I looked and saw the hammer-dog fall. I reached to get it, but before I could the dog struck the saw, and the saw went to pieces and cut me on the arm and my hand. I was using the board-dog at the time; we were not using the hammer-dog, because they didn't cut but one side of the log, and I was holding it by the board-dog the hammer-dog works on the outside and the board-dog with a lever, and I was working the board-dog at the time. The saw had been brazed in a good many places. There are scars on my arm and it cut three fingers off. I was a millwright, and not the regular man to work on the carriage. They were short of men that day and put me on it. I am not an experienced dogger. The foreman told me to go in that place and work there (132) until the boy came back. He did not instruct me as to how it should be worked. I did not know anything about the saw they were using at that time, or I would not have gone on the carriage. I found out afterwards what kind of saw it was, from what I heard, and I saw it afterwards on the junk pile in the yard; they said it was the same saw. When I saw it there it had three of four brazes in it. A braze is where it is grounded up and welded together with two pieces of iron. I think 2 1/2 inches are laid in and welded together; I never brazed any, but all saw have brazes in them; only when one cracks it is supposed to be cut off and brazed so they can make the saw run. It is patched up; you can take a piece and make a saw out of it by brazing together. I worked in the file room and know how it was brazed, but not this particular saw. I have an opinion as to the strength of a saw after it is brazed, and I know it is not as strong; I worked two or three months in the filing room; the strain on a saw when it is operated is about 8,000 to 10,000 pounds. George Keys was setting the logs. I was working on the rear end. George Ormand was on the front end of the carriage. That wasn't my job; they put me there that day. I wasn't supposed to do any kind of work; the foreman asked me to do that work; it was not my duty to relieve those men; I was supposed, as a millwright, to be familiar with all character of work around there. The board-dog holds the log when the log is turned over and the hammer-dog is then thrown over and keeps the log from turning; the hammer-dog projects about 3 or 4 inches from the block. The steel dog is about 2 inches in diameter (indicating from model of the dog); that is set in here and that goes through there; that is what is called the dog. I have seen the teeth of the saw all stripped off. If it don't break it will knock the teeth out. I don't know if the dog getting in front of the saw caused the saw to break when it was struck. The saw broke all to pieces. It was part of my duty, when the log was set, to throw the dog in. They run about two to three brazes in a saw; they can't fix it without a braze. *Page 180 
I don't know what they have in other mills. I guess that was the kind of dog used on carriages like that. I was working on the left-hand side of the mill. The saws become dull after running a little while and then they put on new ones. I don't know about the custom in other mills — that is, what they did in those mills. They changes saws. When I was in the filing room it was the custom, if a saw struck iron or anything, to put a new one on. I didn't do anything to cause the dog to fall into the saw. I didn't touch the dog until I was it falling."
The plaintiff Robert K. Dunn was recalled and testified: "This model don't look like the same machine to me. The saw hit the dog right along there; this right-hand dog struck the saw and I was standing with my hand on the lever. I looked down and saw the dog falling and I (133) grabbed this lever to pull it back, but before I could do that and get it away the saw struck it and the saw burst and cut me like it did. I didn't throw it in, as I had both hands on the other lever like this (indicating). It is possible for the hammer-dog to fall in. In holding the log on the carriage we had trouble twice that night, and the nigger struck the face of the dog, and rolled it over and I saw it jump in the center and gradually fall in; the motion of the carriage after it started gradually works it one way or other. The steam nigger starts very suddenly on the lower floor to the carriage upstairs. When that nigger comes through it has to come from below and turn the log. The dog that fell over was on my right-hand side. I was on the rear part of the carriage."
Without stating more of the case, it is sufficient to say that there was testimony in corroboration of plaintiff, and also testimony in behalf of defendant which tended to contradict his version of the occurrence, and to show that plaintiff was injured, not by defendant's negligence, but by his own want of care in moving the lever at the wrong time, and thereby causing the hammer-dog to fall against the saw and break it.
The jury returned the following verdict:
1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: "Yes."
2. Did the plaintiff by his own careless and negligent conduct contribute to such jury? Answer: "No."
3. What damage, if any, is the plaintiff entitled to recover by reason of such injuries? Answer: "$2,000."
Defendant appealed from the judgment, and assigned numerous errors.
There are many exceptions in this record, but a careful analysis of them will disclose that they may *Page 181 
be greatly reduced in number by classification, and that, at last, there are only a few when we confine ourselves to those which go to the real merits of the case.
The two principal assignments of error are that the court in its charge permitted the jury to consider the doctrine, res ipsa loquitur, as applicable to the facts, and that defendant's motion for a nonsuit and its prayer for a peremptory instruction that in any views of the evidence, if believed by the jury, the issue as to negligence should be answered in the negative, were refused.
We are of the opinion there was evidence in this case which warranted the charge of the court to which exception was taken below. Where the plaintiff shows damage proximately resulting from the defendant's act, which act, with the exercise of due care, does not (134) ordinarily produce damage, he makes out a prima facie case of negligence, which requires the defendant to go forward with his proof or take the chance of an adverse verdict, or, as otherwise stated: "The accident, the injury, and the circumstances under which they occurred are in some cases sufficient to raise a presumption of negligence, and thus case upon the defendant the burden of establishing his freedom from fault. Proof of an injury, occurring as the proximate result of an act of the defendant which would not usually, if done with due care, have injured any one, is enough to make out a presumption of negligence. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." Ellis v. R. R.,24 N.C. 138; 1 Shearman and Redf. on Negligence (16 Ed. by Street), sec. 59; Aycock v. R. R., 89 N.C. 321; Lawton v. Giles, 90 N.C. 374;Haynes v. Gas Co., 114 N.C. 207.
These general definitions were approved and the subject fully discussed in the recent case of Ridge v. R. R., 167 N.C. 510.
The statement of the doctrine which has usually been accepted by the courts was that reported in Scott v. London Docks Co., 3 Hurlst. and C., 596.
The maxim, res ipsa loquitur, does not dispense with proof, but permits the jury to draw a reasonable inference from circumstances which, primafacie and in the ordinary course of things, are generally indicative of negligence. It applies here because there is proof that the plaintiff did not move the lever which controller the hammer-dog, and did not move the hammer-dog itself. The first and only thing he did was the effort he made to stop the falling hammer-dog, which, in some way, had escaped from its proper place, where it was held in position, and *Page 182 
intended to be so held, by its own weight. The eccentric action of this implement might well be inferred to have been caused by some defect in the machine itself, of which it was an important part. There is also evidence that what is called the "nigger" could have jostled the hammer-dog out of place, "though, when it is at rest and out of use at the other end of the circle, it would take a considerable jar to do so." The witness Barrett, who gave this testimony, also stated that the saw was oscillating, and that this does not occur if it is in good order and properly placed and adjusted.
So we have a case not, it principle, unlike Rose v. Cotton Mill,140 N.C. 115, and Morrisett v. Cotton Mills, 151 N.C. 31, where a machine was suddenly and unexpectedly set in motion and the doctrine we are discussing was applied, the Court holding that evidence, which (135) was not more convincing than that we have in this record, was sufficient to raise a prima facie case of negligence under the maxim.
The more recent case of Deaton v. Lumber Co., 165 N.C. 560, seems to be directly applicable to the facts of this case. It appeared there that the plaintiff, who was i the employ of the defendant, was engaged in operating a sawing machine and "that a cut-off saw which had been placed in a good or shield, and should have remained there, sprang forward out of the shield and injured him." If the facts of the two cases are even casually compared, they will be found to bear the very closest resemblance to each other, if they are not substantially alike; and upon the facts in the cited case, the Court did not hesitate to apply the doctrine, res ipsa loquitur. JusticeBrown thus states the Court's opinion upon those facts: "We think that this version of the testimony would justify the jury in drawing the inference of negligence in the manner in which the saw had been placed in its bearings. The manner in which the saw unexpectedly sprang out of the shield and injured the plaintiff, in the way testified by him, is very conclusive evidence that there was something unusually wrong with it, and presents a case where the doctrine of res ipsa loquitur will carry the case to the jury. In this case the facts and circumstances attending he injury speak for themselves, and in the absence of explanation or disproof give rise to the inference of negligence. It is evident that the accident would not have occurred if the saw had not unexpectedly sprang out of its protecting shield. Why it did so is not very clear, but the circumstance calls upon the defendant for explanation."
The court, in its charge did not leave the jury to decide solely upon the naked doctrine of res ipsa loquitur, but require the jury, in addition, to find that "the fact and circumstance" of the hammer-dog falling upon the saw "came from a want of reasonable care and inspection on *Page 183 
the part of defendant," and that it was the proximate cause of the injury. This instruction necessitated a finding by the jury that defendant had failed in its duty toward the plaintiff, whereby he had been injured as described by him, and was not a strict application of the rule that "the thing itself speaks." The jury were further told that they could draw the inference of negligence, or not, after they had heard the defendant's evidence, or, in other words, from the entire evidence.
This disposes of the exceptions numbered 11, 14, 17, 18, 20, 21, 22, 23, 24, and 25.
The part of the charge to which exception 26 was taken was no more than a statement of plaintiff's contention, except the latter part of it, which was favorable to defendant, as we have shown; and exceptions 27 and 28 were merely formal.
The questions as to plaintiff's inexperience, and his ignorance as to the condition of the machine and the necessity to warn him of any special danger in using it were all material for the consideration (136) of the jury. It is the legal duty of the master to provide a reasonably safe place where the servant may work and reasonably safe tools and appliances with which to perform his work, and in order that the master may discharge this duty, he should make reasonable inspection of them from time to time, so that the place, the machinery, implements and appliances may be kept in proper condition — such an inspection as an ordinarily prudent man would make under the same circumstances, if the risk were wholly his own. Marks v. Cotton Mills, 135 N.C. 287;Parrott v. Wells, 15 Wallace (U.S.), 524; Hicks v. Mfg. Co.,138 N.C. 319; Moore v. R. R., 141 N.C. 111; Pigford v. R. R., 160 N.C. 93;Steele v. Grant, 166 N.C. 625; Cochran v. Mills Co., 169 N.C. 57. A cognate duty, which rests upon the master, in order to secure the safety of his servant while at work, is the one of careful instruction, if the servant be inexperienced or "green," to the end that he may know how to handle the particular machine or other appliance, and may understand and appreciate the dangers in its use. Marcus v. Loane,133 N.C. 54; Chesson v. Walker, 146 N.C. 511; Avery v. Lumber Co.,ibid, 592; Craven v. Mfg. Co., 151 N.C. 352; Wood v. McCabe, ibid, 457; Horne v. R. R., 153 N.C. 239. These well settled principles dispose of the fifteenth and sixteenth exceptions. It was also competent and relevant under them to show that plaintiff was not an experienced dogger, and was not properly instructed as to his duties, and did not know of any defects in the machine or of any dangers in the use and operation of it. It was also competent to inquire as to the condition of the saw, and, of course, in this connection, as to what effect brazes on it would have upon its strength and fitness for the work. It all tended to show the true situation at the time the hammer-dog fell on *Page 184 
the saw, and splintered it, and plaintiff's inability to take care of himself. This covers the 1st, 2d 3d, 5th, 6th, 7th, and 10th exceptions. It was relevant to show whether the steam nigger, if defectively working, could cause the dog to rise over the metal arch upon which it moved and fall on the saw; but this is not what the witness said, as he merely answered that he had seen such a thing occur. He was not giving an opinion, but testifying to a fact which had come under his observation. And it was also proper to prove anything unusual, or out of the ordinary, in the operation of the machine, either the peculiar noise it made or its swaying or oscillating motion, or anything else of a like kind, which indicated that it was not in good order, for the allegation is that the machine being defective was what caused the injury. It was for the jury to say whether the plaintiff moved the hammer-dog in the careless operation of the machine or whether it was forced from its place by some defect in the machine itself. The question as to the use of inferior (137) saws by defendant was not answered so as to do any harm, for the witness disclaimed any knowledge of it. It was not claimed, that there was any defect in the hammer-dog itself, but that it was not sufficiently secured, or, if this was not so, that a defect in the machine caused it to fly out and drop on the saw. If the plaintiff was not responsible for the movement of the hammer-dog, and the jury found that he was not, it must have been either improperly secured or some defect in the machine, either in its original construction or in its needed repair. must have caused the hammer-dog to fall on the saw.
It is not always a full performance of the master's duty to provide merely for his servant implements and appliances which are known, approved, and in general use. He will still be liable for any injury proximately resulting from a failure to perform that duty in any other respect. He is not permitted to put defective machines or appliances in the hands of his servant with which to do the work, even though they may be of the requisite model, or type; and if he is negligent in so doing, and thereby causes injury to servant, he must answer in damages for the wrong. Ainsley v. Lumber Co., 165 N.C. 122; Kiger v. Scales Co.,162 N.C. 133. This rule has frequently been recognized by us in negligence cases. It is a part of his obligation to furnish appliances, "which are known, approved, and in general use," but not necessarily all of it, and if he complies with that part of it, and is otherwise negligent in not supplying a reasonably safe place for the work to be done, or reasonably safe machinery, tools and appliances with which to do it, he falls short of the legal measure of his duty.
In this case the injury was caused neither by the saw nor by the hammer-dog alone, or acting separately, but by both together, they being in rapid motion and coming together with great violence, which *Page 185 
caused the heavier body to almost demolish the other, and so shiver it that plaintiff was cut and injured by the flying pieces. This was the proximate cause of the damage.
Several of the objections were taken to a mass of evidence, some of which was competent. Where this is the case, the objection is too broad. It should be confined to the incompetent part of the evidence. S. v. Ledford,133 N.C. 714; Ricks v. Woodard, 159 N.C. 647.
We conclude that there was no error in the trial.
No error.
Cited: Taylor v. Lumber Co., 173 N.C. 114 (7c); Lynch v. Dewey,175 N.C. 157 (7c); Holt v. Mfg. Cop., 177 N.C. 175 (4c, 5c, 6c); McMahan v.Spruce Co., 180 N.C. 641 (8c); Cook v. Mfg. Co., 182 N.C. 209 (7c); Suttonv. Melton, 183 N.C. 372 (4c); Lacey v. Hosiery Co., 184 N.C. 22 (7c);Dellinger v. Building Co., 187 N.C. 848 (7c); O'Brien v. Parks Cramer Co.,196 N.C. 365 (1c).
(138)