SOPHRONY WOOTEN v. GRAND UNITED ORDER OF ODD FELLOWS.

(Filed 11 September, 1918.)

**1. Insurance, Life—Change of Beneficiary—Conditional Interests—Application—Rules and Regulations.**

A beneficiary under a life insurance policy, with reasonable rules and regulations of the company providing that the insured may change, the beneficiary acquires only a condition interest under the term of the policy until the death of the insured; and where the policy or rules of the insurer provides that such change may be made in a particular way, the method prescribed should be followed; but when the insured, by his affirmative act, has substantially done all that is required of him, or what he is reasonably able to do, to effect a change of the beneficiary, with nothing remaining to be done except the ministerial acts of the insurer, the consent of the beneficiary is not necessary and the change will take effect though the formal details are not completed by the insurer before the death of the insured. The company itself consented in this case.

**2. Same—Equity.**

Where the insured, given the right to change the beneficiary in his policy of life insurance, has pursued the course required by the policy and the rules of the association, and have done all in his power to make the change, but dies before the new certificate is actually issued, leaving only the ministerial acts of the company to be done in perfecting the change,

equity will decree that to be done which ought to be done, and will act as though a new certificate had been issued or the change contemplated had been made.

### 3. Same—Acceptance—Waiver.

Where, under the rules and regulations of a life insurance company, the insured is given the right to change the beneficiary, with the consent of the company, the required consent is solely for its protection, which it may waive by accepting the written notice and making entry of the change on its policy record, etc.; and the beneficiary, as changed, having an insurable interest, will be entitled to the proceeds of the policy, though the company had issued the new policy thereafter, and after the death of the insured.

### 4. Same—Implied Promise—Parol Agreement.

Where the insured has the right to change the beneficiary of his policy of life insurance, under the rules and regulations of the company, by a prescribed method, which he has followed and which has been accepted by the company, the acceptance by the company is equivalent to an implied agreement that the proper change had been made in sufficient form, or to an implied promise to make the change, which will be upheld, where the issuance of another policy is required, as an oral promise to insure. *Floars v. Insurance Co.*, 144 N. C., 232, cited and applied.

### 5. Same—Lost Policy—Reissuance.

Where the insured has the right to change the beneficiary of his life insurance policy by having the change made on the face of the policy, which has been lost, or to the reissuance of the policy as changed, and has followed the method prescribed by the rules and regulations of the company in requesting the latter, which has been approved by it, its approval of the request, or assent thereto, is sufficiently formal, and the proceeds of the policy are payable to the beneficiary as thus changed, though the policy was not actually issued until after the death of the insured.

### 6. Insurance—Evidence—Principal and Agent—Policies—Change of Beneficiary.

It is competent for the local officer of an insurance society, who has been requested by the insured, since deceased, to write out his application for a change of beneficiary of his policy of life insurance, where the policy has been lost, and the request approved by the company, to state what the insured said to him at the time he wrote the application for him.

### 7. Insurance—Parol Evidence—Writing—Independent Fact.

It is competent for the proper officer of an insurance order to state that a written application for the change of beneficiary under a policy of insurance had been received at his office, as an independent fact; and it is not objectionable on the ground that the writing is the best evidence.

### 8. Appeal and Error — Harmless Error — Insurance — Parol Evidence — Writing—Independent Fact.

Where the insured has had done all that is required of him by the rules and regulations of the insurance company to change the beneficiary of his policy, testimony of the proper officer of the company that the written application had been received at his office, if incompetent, is harmless error.

9. **Appeal and Error — Objections and Exceptions — Evidence — Motion to Strike Out.**

Where competent and incompetent evidence is given on the trial of an action, the refusal of a motion to strike out the whole is proper, as the objection will not be confined to the incompetent part by this Court on appeal.

10. **Appeal and Error—Harmless Error—Evidence—Result.**

Incompetent evidence, admitted on the trial, will be considered as harmless error, on appeal, when it is not of sufficient importance to have affected the result.

ACTION tried before *Connor, J.,* and a jury, at April Term, 1918, of BEAUFORT.

The plaintiff sued to recover the amount of a life policy issued to Thomas Whitaker by the defendant, and payable, at first, to his sister, the plaintiff, as beneficiary, and afterwards changed so as to be payable to his wife, Colorado Whitaker, under a clause reserving the right to change the beneficiary. The right to make this change was not disputed by the plaintiff, but she contends that the change was not actually or legally made, so as to make it effective, before the death of Thomas Whitaker. The latter was a member of the Stone Square Lodge, No. 1688, at Washington, N. C., where he lived, and the policy was issued by the District Grand Lodge and was made subject to its laws, rules and regulations, one of which was that "The beneficiary may be changed on the face of the policy by returning it to the endowment office, certifying change desired, and enclosing 10 cents." The evidence tends to show that, a short time before his death, Thomas Whitaker applied in writing for a change of the beneficiary from his sister, Sofrony Wooten, to his wife, Colorado Whitaker, whom he had married since the policy was issued. This application was duly received by the Grand Lodge, and as there was some objection to the form, though substantially correct, another was made in the form prescribed for the purpose, and was also received by the lodge before his death, and accepted as a full compliance with the rules and regulations; and after the death of the insured, Thomas Whitaker, the amount of the policy was paid to his widow, who was the new beneficiary. The policy had been lost, and the change on its face could not be made at the time of the application, but on 21 October, 1916, a new policy was issued by the lodge. This was after the death of Thomas Whitaker, which occurred on 18 September, 1916. The "laws, rules and regulations" of the lodge provide that a "Duplicate policy may be secured, in case of loss of policy, by making application, signed by the member and countersigned by the N. G. and P. S., with lodge seal attached, upon payment of 10 cents, which application shall be attached to the policy when so issued." Thomas Whitaker, in his

application asking for a change of the beneficiary, also requested that a new policy be issued to his wife. It appeared that the change of beneficiary was made in the office of the secretary of the Grand Lodge in September, 1916. The policy register, at the time of Thomas Whitaker's death, showed that Sofrony Wooten was the beneficiary in the policy, but that an application for change of beneficiary had been made, and that at that time only one policy had been issued. There were objections by the plaintiff to certain evidence of the witnesses, Daniel Roberson and P. A. Richardson, respectively, secretaries of the local lodge and the Grand Lodge, and a motion to strike out the testimony of the latter, which were overruled. They will be noticed hereafter.

The plaintiff tendered these issues:

1. Did the defendant, prior to death of Thomas Whitaker, reissue a policy upon life of Thomas Whitaker, making Colorado Whitaker the beneficiary thereof?

2. If so, was the said change of beneficiary in said policy authorized by application of Thomas Whitaker.

The court submitted issues, upon which the jury rendered the following verdict:

1. Did Thomas Whitaker, the insured, prior to his death, direct the secretary of the local lodge, Daniel Roberson, to sign an application for him, and arrange that the beneficiary under his insurance policy should be changed from Sofrony Wooten, his sister, to Colorado Whitaker, his wife? Answer: Yes.

2. Was the original policy then misplaced or lost, so that the insured, Thomas Whitaker, could not surrender it with his application for change of beneficiary? Answer: Yes.

3. Did the insurance company make the change of beneficiary, as requested, prior to the death of Thomas Whitaker, waiving the requirement for the surrender of the original policy? Answer: Yes.

Judgment for defendant, and appeal by plaintiff.

*John G. Tooly and Harry McMullan for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

WALKER, J., after stating the case: It is now considered that an insurance company may make reasonable rules and regulations by which the insured may change the beneficiary named in the policy of insurance, or his certificate in the case of benefit societies, and that such rules and regulations become a part of the contract. Where the policy or rule of the company, or society, provides that such a change may be made in a particular way, the method prescribed should be followed, but if the insured has done substantially what is required of him, or what he is

able to do, to effect a change of beneficiary, and all that remains to be done are ministerial acts of the association, the change will take effect, though the formal details are not completed before the death of the insured. It must be understood, however, that some affirmative act on the part of the insured to change the beneficiary is required, as his mere unexecuted intention will not suffice to work such a change. When the right to substitute another beneficiary exists by express reservation, or otherwise, the insured, or member of a benefit society, may, without the consent of the original beneficiary, and subject only to the rules of the association, change his beneficiary at will. *Pollock v. Household of Ruth*, 150 N. C., 211. This is true, because the beneficiary whose right, under the policy, or certificate, may thus be taken away, has only a contingent interest therein, which will not vest until the death of the insured. The revocation of his appointment as beneficiary does not require his consent, as the power to displace him is vested solely in the insured, provided he proceeds in substantial compliance with the rules of the association, which may be waived by the company, or society, where they are made for its benefit or protection.

The general rule is that the right to a policy of insurance, at least to one of the ordinary character, and to the money which may become due under it, vests immediately, upon its being issued, in the person who is named in it as beneficiary, and that this interest, being vested, cannot be transferred by the insured to any other person (*Central National Bank v. Hume*, 128 U. S., 195) without his consent. This does not hold true, however, when the contract of insurance provides for a change of the beneficiary by the insured, or such a right arises in some other way, for in such a case the right of the beneficiary vests conditionally only, and is subject to be defeated by the terms of the very contract, or instrument, which created it, and is destroyed by the execution of the reserved power. These principles, we take it, are well settled by the highest authority and great weight of judicial opinion. 4 Cooley's Briefs on the Law of Insurance, par. 3762-3772; *Nally v. Nally*, 74 Ga., 669; *McGowan v. Supreme Court of Ind. Order of Foresters*, 104 Wis., 173; *Schoenan v. Grand Lodge*, 85 Minn., 349; *Sanburn v. Black*, 67 N. H., 537; *St. L. Pol. Assn. v. Strode*, 103 Mo. App., 694; *Luhrs v. Luhrs*, 123 N. Y., 367; *Donnelly v. Burnham*, 86 App. Div. (N. Y.), by Hun., p. 226 (Aff. in same case, 177 N. Y., 546); *Hancock Mut. L. Ins. Co. v. White*, 20 R. I., 457. From these cases, which very strongly and, we may say, conclusively support the defendant's contention, it seems to be now well settled that one who is insured, with the right to change the beneficiary, and who wishes to exercise this right, must make the change in the manner required by his policy and the rules of the association, and that any material deviation from this course will render the attempted change

ineffective. It is equally well settled that there are cases where literal and exact conformity with the requirements of the policy may be excused. The subject was fully considered in *McGowan v. Supreme Court of Ind. Order of Foresters, supra,* where it was said that *Supreme Conclave v. Cappella,* 41 Fed Rep., 1, exhaustively reviewed this question in its entire phase, and the Court there reached the conclusion that there were three exceptions to the rule of exact compliance with the terms of the policy, or certificate: first, where the society has waived strict compliance by issuing a new certificate without insisting on the performance of all the intermediate steps; second, where, by loss of the first certificate without fault, its surrender becomes impossible, a court of equity will not require an impossibility, but will treat the change as made if the insured has taken all the other necessary steps and done all in his power to make the change; third, where the insured has pursued the course required by the policy and the rules of the association, and done all in his power to make the change, but before the new certificate is actually issued he dies, a court of equity will decree that to be done which ought to be done, and will act as though a new certificate had been issued, citing *National Assn. v. Kirgin,* 28 Mo. App., 80; *Isgrigg v. Schooley,* 125 Ind., 94; *Grand Lodge v. Noll* (Mich.), 15 L. R. A., 350, note; *Marsh v. Supreme Council,* 149 Mass., 512; *Luhrs v. Luhrs,* 123 N. Y., 367; Bacon Ben. Soc. (new ed.), pp. 310, 310a.

In *Donnelly v. Burnham, supra* (which, as we have seen, was approved and affirmed by the Court of appeals of New York), the acts done by the policyholder were essentially the same as those done in this case, and the new policy, or certificate, was mailed to his address after his death, and the Court said: "It will be seen, therefore, that the deceased had in this case done all that was in his power, before he died, to make this change in the beneficiary under his certificate. The association had no reason for refusing the new certificate, and no interest in so refusing. No discretion in the matter. Its action in receiving the application and issuing the new certificate was merely formal and related back to the time when the application was delivered to the secretary of the branch of the association. The by-laws of the association provided for nothing to be done by the deceased after the delivery to the branch secretary. Everything to be done thereafter was to be done by the association and its officers and agents in the formal steps necessary to carry out and complete the change made by the deceased," citing *Luhrs v. Luhrs, supra,* as approved in *Thomas v. Thomas,* 131 N. Y., 205; *Fink v. Fink,* 171 N. Y., 624; *Lahey v. Lahey,* 174 N. Y., 146. In the *Luhrs case* the facts were also similar to those we have here, and the Court said, in making the same ruling: "The certificate, when issued, may be thus regarded as relating back, on the ground that it is merely and purely a formal act on the part

of the Supreme Lodge, registering and giving written evidence of a transaction, all the material facts of which had occurred during the lifetime of the deceased. No new rights were brought into being by the action of the Supreme Lodge after the death of the member, but that action simply gave the proper written evidence to the beneficiary of the existence of those rights which had in fact accrued before the formal issuance of such written evidence." The Court further said in that case: "There is nothing in the point that the deceased, having designated his wife as the beneficiary, could not thereafter deprive her of the money due upon the policy. The contract was one provided for by and in accordance with the constitution and by-laws of the organization, and the original certificate was issued subject thereto, and it was the undoubted law that if the rules and regulations were complied with, the beneficiary could at any time be changed by the direction of the member." The identical contention which was made here by the plaintiff was considered in *Sanborn v. Black, supra,* and treated in the same manner as it was by the courts in the cases just mentioned, the Court saying in its opinion: "It is not claimed that any reason existed in this case for withholding consent. The person designated as beneficiary is one of a class entitled to become such, and, so far as appears, is unexceptionable in all respects. One purpose of the by-law was to secure to the association reliable evidence of every change in beneficiaries, so that it would know to whom it was liable upon the death of a member, and be protected, to some extent at least, from litigation by adverse claimants. *Anthony v. Assn.,* 158 Mass., 322, 324; *Supreme Council, Amer. Legion of Honor, v. Smith,* 45 N. J. Eq., 466; *Supreme Conclave v. Cappella,* 41 Fed. Rep., 1, 4. Here this purpose was fully accomplished. Black's designation was sufficient, in form and substance. It was forwarded to and received by the association several days before his death. He did all that he was required to do, all that he could do, to complete the transfer of the association's obligation to Louisa. There being no sufficient reason to justify other action on the part of the directors, he had the right to have the transfer consented to by them and recorded. The only reason suggested why consent was not given and record was not made is because the directors did not meet before his death after receiving the assignment. If they had met and declined or neglected to consent, and Black had lived, law or equity would have furnished him an adequate remedy to secure his right. *Walker v. Walker,* 63 N. H., 321. Upon his death, Louisa's expectancy became a vested right. She became entitled (as he was, in his lifetime) to insist that the directors should perform their duty under the contract. *Scott v. Association,* 63 N. H., 556; *Connelly v. Association,* 58 Conn., 552; *Vivar v. Knights of Pythias,* 52 N. J. Law, 455. Under the circumstances, equity treats that as done

which ought to have been done. *Supreme Conclave v. Cappella,* 41 Fed.
Rep., 1; *Isgrigg v. Schooley,* 125 Ind., 94." In that case the policy was
changed from the first to the second wife as beneficiary, and the by-laws
required the consent of the company to be expressed and recorded, which
was not done, though the request of the insured to make the change had
been received by it. It was then further said that the association's
promise to pay the sum named in the policy to the person designated is
absolute, giving the insured the right to choose and to change the bene-
ficiary at will, and thus it is distinguished from the ordinary policy of
insurance, as no one has a vested interest to the insurance in the lifetime
of the insured, because of this clause as to the selection of the beneficiary.
The insurer cannot arbitrarily withhold its consent to the change, nor
defeat the will of the insured, by its negligence or bad conduct, as this,
the Court said, would go to the destruction of the thing granted, which,
according to the well known rule, would pass, discharged of the condi-
tion. See *Walser v. Insurance Co.,* 175 N. C., 350, where the right to
choose the beneficiary is discussed.

The following language of the Court, in *Schoenan v. Grand Lodge,*
*supra,* at p. 355, is relevant to one phase of this case: "The recorder is
stated to be the proper officer to receive the instrument designating the
change, and, having elected to accept it, it must be treated as a compli-
ance with the requirements of the lodge. The main question is, did the
member succeed in expressing his intention to change the beneficiary?
Under the findings of the court, it is clear that he did, and that his
desire was made known to the satisfaction of the association, substan-
tially in accordance with the requirements of the constitution." In
*Hancock Mut. L. Ins. Co. v. White, supra,* it was held that the bene-
ficiary newly designated is entitled to the fund when the assured has
done everything that was necessary on her part to effect the change, the
provision for the consent of the company being inserted solely for its
protection, and, therefore, one on which it alone can insist; and where
it has consented, or waived its consent, the change of beneficiary was
sufficiently made. In that case consent of the company had not been
given, nor any record made of the transaction on the books of the com-
pany, and yet the fund was adjudged as belonging to the person named
in the written request for the change. The Court said, in *St. Louis*
*Police Relief Assn. v. Strode, supra:* "As a general rule, the regulations
of the association respecting a change of beneficiary should be followed,
but well established exceptions to literal compliance exist, as where the
society waives a strict observance of its own rules; where it is beyond the
power of the insured to comply literally with such regulations; and,
finally, where the insured has done all, on his part and in his power, to
change the beneficiary, but death intervenes before the full consumma-

tion of the change. *Supreme Council, etc., v. Cappella, supra; National, etc., Assn. v. Kirgin,* 28 Mo. App., 80."

In none of the cases reviewed by us was there any more compliance with the terms of the policy than there was in this instance. But *Nally v. Nally, supra,* bears the closest resemblance to our case in its important facts. There, as here, the policy was payable to the sister, and the insured requested that it be changed, so as to be payable to the woman whom he had subsequently married. No change was made in the policy, which was in possession of the sister, but the officers of the company promised to attend to the matter, but failed to do so. The Court held that the gift to the sister was not perfected, so as to be absolute and irrevocable, there being a clause allowing a change of beneficiary or assignment of the policy. Held, further, that there being no condition in the policy requiring the consent of the beneficiary named therein to a change of any of its terms or of the parties entitled to claim under it; whether such change was to be effected by parol or in writing was a matter entirely between the assured and the company; and if the latter chose to dispense with any of the modes of effecting this purpose, it concerned no third party, nor could the company capriciously refuse the change. The marriage having brought the wife into the designated class, which qualified her to be a beneficiary, and the object of the change being a meritorious one, equity will consider that as done which ought to have been done, and give relief accordingly. Two cases could not be more alike in their material facts than *Nally v. Nally* and this one, except that in this case more was done than was attempted in that one. We might add many other cases to this list which establish beyond question the same doctrine, for there are such, but those cited will suffice to show how well settled the principle is by the decisions of the courts.

In this case the application was written by the insured's friend and an officer of the lodge; it was received by the Grand Lodge, and accepted as a sufficient compliance with the rules of the order. The policy had been lost—destroyed by rats, as the insured believed—and could not be produced for the "change in its face" to be made. A new policy could be issued, of course, but this provision is intended to be at the option of the insured, and if it could be thus issued the lodge should have issued it. But it was content with the written request which it had accepted, which was equivalent to a clearly implied agreement that the proper change had been made in sufficient form, or, at least, to an implied promise to make the change. This Court has held, in *Floars v. Insurance Co.,* 144 N. C., 232, that an oral contract of insurance, or an oral promise to insure, which is executory in its nature, will be upheld if otherwise valid, except, perhaps, in the case of guaranty insurance, citing Vance on Insurance, 148; 1 Beach on Insurance, sec. 438, note 2. That case was

approved in *Lea v. Insurance Co.,* 168 N. C., 478, where numerous cases. are cited. The policy which is generally issued upon the oral agreement is only the evidence of the terms of the contract. So, in this case, it was. evidently intended that the acceptance of the request, and the assent thereto, was regarded as sufficiently formal, without the change in the face of the policy, especially as the latter was lost, and therefore a literal compliance was not possible. Any further action on the part of the insured, or the proposed beneficiary, was waived by the conduct of the lodge. It would be a singular and unwarranted perversion of justice if we should hold otherwise. The intention of the company to make the change in accordance with the application of the insured is so manifest that no court could well refuse to execute it. In the recent case of *Supreme Council of the Royal Arcanum v. Behrend,* decided by the Supreme Court of the United States, 3 June, 1918 (Advance Opinions, published by L. Coop. Pub. Co., 1 July, 1918, No. 15, at pp. 608-611), *Justice Brandeis* said: "The plaintiff alleged that the certificate had not been surrendered and that she had not been requested to surrender or deliver up the same for change of beneficiary. The latter allegation is denied by the affidavit of defense, and the statements therein contained must be taken as true. But the fact is not material. As indicated by the printed 'Form for Change of Beneficiary,' indorsed on the certificate, which refers to both 'surrender and return,' the requirement of a surrender does not necessarily imply a return to the order of the original paper, called the 'benefit certificate.' Furthermore, requirements of that. character are made for the protection of the society, and if complied with to its satisfaction, or if waived by it during the lifetime of the insured, cannot be availed of to support the claim of a former beneficiary."

The question of evidence presents little or no difficulty. The testimony of Daniel Roberson was sufficient to show a compliance with the rule of the lodge, as the policy was lost and could not therefore be produced, and the lodge was satisfied with what Roberson said was done. His testimony was admitted, without objections, save two, which are clearly untenable, it being competent for him to state what the insured said to him, as he was asked by the insured to write out the request to the lodge and sign it for him. This was substantially all of his answer. Roberson could not. have performed the service as the insured's agent, unless he knew what. the latter wished him to do. The very nature of the question, to which objection was taken, discloses its competency. The other matter was. irrelevant. It made no difference who paid the premiums.

It was competent for the witness, P. A. Richardson, to state that the application for the change was received in his office, he being the proper

officer of the lodge to receive it. That was an independent fact, and did not involve any disclosure of the paper's contents.

It generally is true that the writing itself is the best evidence of its contents, but here it was not necessary to prove more than that the insured himself had done all that was required of him, or all that he could do. To speak, therefore, of the change of beneficiary, as made in the records of the lodge, was harmless, if it was not competent. Again, the question, as it was framed, was proper, as also was the direct answer to it. If what the witness afterwards said, under further examination and cross-examination, without any objection entered, except by a motion to strike it out, after it all was in—was objectionable in any respect, the particular part considered so should have been pointed out or specified by objection to it in due time, for some of the mass of testimony was clearly competent; and under a general objection, or motion to strike out, we will not undertake to separate the two and eliminate the incompetent part. *S. v. Ledford,* 133 N. C., 722, where it was said: "The objections are general, and the rule is well settled that such objections will not be entertained if the evidence consists of several distinct parts, some of which are competent and others not. In such a case the objector must specify the ground of the objection, and it must be confined to the incompetent evidence. Unless this is done, he cannot afterwards single out and assign as error the admission of that part of the testimony which was incompetent." *Howard v. Wright,* 173 N. C., 339, 345; *Dunn v. Lumber Co.,* 172 N. C., 137; *Ricks v. Woodward,* 159 N. C., 647; *S. v. Foster,* 172 N. C., 960, and *Goins v. Indian Training School,* 169 N. C., 739, which was an exception to an affidavit (treated as a deposition, by agreement) and a motion to strike it out. The same rule was applied and the motion overruled. But in the view we have taken of this case, on its merits, we are of the opinion that the evidence, even if any of it was incompetent, was harmless or not of sufficient importance to have affected the result or to warrant a new trial. *Goins v. Indian Training School, supra.*

The charge covered all the controverted questions, and was clear and full. It was really a question of fact for the jury whether under the evidence the change of beneficiary had been requested by the insured and he had done all required of him. There was evidence sufficient to support the verdict as a whole, and we find no error in the record.

No error.