### NEW ENGLAND MUT. LIFE INS. CO. v. REID et al.

(District Court, D. Maryland. February 21, 1920.)

Insurance ⟨⟩587—Substituted beneficiary held entitled to insurance, though change was not indorsed on policy.

Where insured had three times written to the insurer that he desired to substitute his wife for his sister as beneficiary, but for various reasons, not indicating a change of mind, had neglected to send the proper blank with the policy to the company to have the change indorsed thereon, as required by the policy before the substitution should become ef-

fective, a provision for the benefit of the company on which it was not insisting, the wife is entitled to the insurance money.

At Law. Interpleader by the New England Mutual Life Insurance Company against Katherine Reid and Ethel Banta Durboraw. On final hearing. Decree entered, adjudging fund in controversy to defendant Durboraw.

Ralph Robinson, of Baltimore, Md., for New England Mut. Life Ins. Co.
Louis J. Burger, of Baltimore, Md., for Katherine Reid.
Joseph Packard and A. Morris Tyson, both of Baltimore, Md., for Ethel Banta Durboraw.

ROSE, District Judge. On July 31, 1915, the New England Mutual Life Insurance Company, hereinafter called the Company, issued a policy for $5,000 to Raymond H. Durboraw. As he was then unmarried, it was made payable to his sister, Katherine Reid; but he reserved the right to change the beneficiary when and as often as he saw fit, by filing at the Company's home office a written request for such change, to take effect only when indorsed by the Company on the policy.

Nearly three years later he wrote to the agent, through whom he had effected the insurance, that he had married five days before, and wanted his policy at once to be made payable to his wife, so as to take effect "to-day, June 16, 1918," adding:

"I put this in this way so that, if I should go before the change is recorded, this letter will be evidence of my desire in the matter."

He gave his wife's name, and asked if this was sufficient information, or if any other step was necessary. The agent had some time before left the employ of the Company, and on the 21st of June he sent Durboraw's letter to the general agent of the Company at Des Moines, Iowa, and on the same day wrote the insured:

"In regard to the change in beneficiary, I am sending your letter to headquarters, so that your wish will be made effective at once. The proper blank will be sent to you for your signature. This blank, together with your policy, will be sent to the home office, where the change of beneficiary will be indorsed on it. This will be done without expense to you."

On the 28th of June the Company's general agent at Des Moines wrote to the insured that he had been advised that he desired to change the beneficiary, and inclosed blanks for the purpose, which he told the insured to sign, date, and have witnessed, and return with the policy, adding that the desired change would be then made. When this letter was received, both the insured and his wife were at Moorhead, Minn., teaching in a summer school. After the school closed, they had planned to go to Hinsdale, Mass., for a month or more, and after that to locate in New York City, where both expected to take courses at Columbia University.

It so happened that the blanks and policy got into baggage that they put in storage, and in consequence were inaccessible until fall. On

the 22d of August, the insured, in sending from Hinsdale his annual premium, stated:

"I shall be unable to send you the blanks concerning change in beneficiary of said policy for some weeks yet. I trust the delay will be of no particular consequence. I will be able to send it soon after September 1st."

On the 23d of September, the insured executed the two duplicate forms of notice of change of beneficiary, in the presence of one George W. Metcalf, who duly witnessed the same. Shortly before that time, the insured and his wife had begun housekeeping in an apartment in New York City. They both entered Columbia. For some hours every day he was engaged in teaching, and during others in studying. They had their new home to fit up. They had a succession of guests, and were very busy. It may have been that the policy was where it took a little trouble to get at it. At all events, for some reason or other, he overlooked forwarding to the Company either the policy or notice of change of beneficiary. In the latter part of October, he was taken ill with the "flu," and although he was only 35 years of age, and had been in excellent health, he died on November 3, 1918. Twelve days later his widow sent the notice of change of beneficiary to the Company. The sister persisted in her claim. The widow sued the Company in Iowa; the sister in Maryland. The Company, availing itself of the provisions of the act of Congress of February 22, 1917, c. 113, 39 Stat. 928 (Comp. St. § 991a), filed a bill of interpleader here and paid the amount of the policy into the registry of the court.

Does the money belong to the widow or the sister? During the lifetime of the insured, the sister had no substantial interest in the policy. Cohen, Trustee, v. Samuels, 245 U. S. 50, 38 Sup. Ct. 36, 62 L. Ed. 143. The Company did not reserve any volition to itself. It was bound to indorse upon the policy any change which the insured in writing requested it to make. The proviso that the substitution should not take effect until such indorsement is made is for the protection of the Company. It does not ask for it.

There are cases not a few, some of them well considered, which hold that, even so, the old beneficiary has the better right, if the death occurs before the insured has done everything which the policy requires him to do in order to perfect, or perhaps to evidence, the substitution. Standing on them, the sister says that the insured never filed a proper request at the home office of the Company, and never sent in his policy for indorsement, although, for all that appears, he had ample opportunity to do so.

It would profit little to analyze the literally hundreds of cases which have dealt with, and frequently sustained, that or similar contentions. Under many circumstances, the failure promptly to send the request and the policy to the company would be evidence that the insured had not definitely made up his mind that he wished to effect the substitution, and, wherever there is any possibility of doubt on that question it would be unsafe and improper to hold that he had done what there was a chance he did not want to do.

The evidence in this case satisfied me, however, that the wish, three times put in writing by the insured, namely, in his letters of June 16th

and of August 22d, and by his signature on the company's blanks on September 23d, was never changed. He wanted to do what every normal man, situated as he was, would and should have felt like doing. When he married, his duty was to look out for his wife. If he should die, she, and not his sister, had the first claim upon any insurance, the disposition of which he could control. He recognized his obligation, and promptly after his marriage sought to discharge it. Various incidents and accidents prevented his sending the policy to the Company, or at least resulted in its not being sent.

To hold that what was his, to do with as he would, shall go where he had three times in writing declared he did not wish it to go, and where both his pleasure and his duty imperatively demanded it should not go, would be technical overmuch. Two of the more recent cases in which the law governing such matters is most satisfactorily discussed are State Mutual Life Ins. Co. v. Bessett, 41 R. I. 54, 102 Atl. 727, L. R. A. 1918C, 961, and Wooten v. Order of Odd Fellows, 176 N. C. 53, 96 S. E. 654.

The decree should adjudge the fund to the widow.