MARCUS v. LOANE.

(Filed September 22, 1903.)

1. OPINION ON EVIDENCE—*Evidence—Negligence.*

In an action to recover damages for a personal injury, it is error for the trial judge, in his instructions, to say to the jury "Was it due care to put the boy in charge of the engine without warning?" where the main question in dispute was whether the boy was in charge of the engine without having been properly warned.

2. NEGLIGENCE—*Proximate Cause—Damages.*

In an action to recover damages for personal injuries, it is error to instruct that if the machinery was out of order, as contended by the plaintiff, and the defect was known by the defendant, the defect constituted a continuing negligence on the part of the defendant, and it was not contributory negligence on the part of intestate of plaintiff to do what he did, without adding "if the negligence of the defendant was the proximate cause of the injury."

ACTION by A. Marcus, administrator, against C. D. Loane and Company, heard by Judge *M. H. Justice* and a jury, at April Term, 1903, of the Superior Court of WASHINGTON County. From a judgment for the plaintiff the defendants appealed.

*W. M. Bond* and *Rodman & Rodman,* for the plaintiff.
*H. S. Ward* and *G. W. Ward,* for the defendants.

CONNOR, J.   This is an action brought by the plaintiff
administrator of Peter Marcus, deceased, for damages alleged
to have been sustained by reason of the death of his intestate,
caused by the negligence of the defendant.   The plaintiff tes-
tified that he was the father of Peter Marcus; that the de-
ceased was about fifteen years of age at the time of his
death; that the deceased first worked on the lumber yard
of the defendant, and quit and went in the house at defend-
ant's mill about nine or ten days before he was hurt.   The
testimony tended to show that the deceased was employed at
the defendant's lumber mill to oil machinery, and that on his
attempting to turn the throttle of the engine it exploded,
whereby he was scalded by hot water from the pipes, which
resulted in his death.

The theory of the plaintiff was that his intestate was em-
ployed to manage and operate the engine and was not prop-
erly educated in respect to the duty, was too young to be put
at such work, that he was directed by the engineer to start
the engine, and that the engine was in a defective condi-
tion.

The theory of the defendant was that the plaintiff's intes-
tate was acting outside of the sphere of his employment,
turned the throttle without the knowledge of the defendant
and without any direction to do so, and failed to turn the
relief valve below the throttle before turning the throttle,
and that as a natural consequence of the act, the engine
having been at a standstill for several hours by reason whereof
the steam in the pipes just next to and above the throttle had
condensed into water, the pressure of the volume of water
behind from the pipes thus set in motion became irresistible.

The testimony in respect to the several contentions was conflicting.

His Honor in charging the jury said that "It was the duty of the defendant, if he directed the plaintiff's intestate to manage the engine and turn on the steam or allowed him to do so in the course of his duties, and if the defendant knew that he was young and inexperienced, to instruct him as to its danger, and to use due care in directing his attention to the danger, if any, connected with the engine and valve. It would be negligence in the defendant if he employed a boy fifteen years old without experience and put him to running an engine without giving him careful instructions how to use it, and if that was the proximate cause of the injury, you should answer the first issue 'Yes.' " To this portion of the instruction no objection can be sustained. It was entirely correct. His Honor proceeded immediately to say to the jury: "Was it due care to put the boy in charge of the engine without warning him of the danger, if any, and if not, was that the proximate cause of the injury?" and then to say: "It was the duty of the defendant to exercise due care in the employment of the boy to do such work as that of managing dangerous machinery, that is, was the hiring of a fifteen-year-old boy to run a mill and manage machinery without warning him of danger, if any, a thing that a prudent business man under the same circumstances would do? Was it due care to put the boy in charge of the engine without warning? Would a reasonable and prudent man do it, and, if not, was that the proximate cause?—that's the question." To this charge the defendant excepted, alleging as ground for his exception that his Honor expressed the opinion, or assumed it as proved, that the boy was employed to manage the engine. His Honor used the expression, "was it due care to put the boy in charge of the engine?" later, repeating this language and saying further: "Was the hiring of a fifteen-year-old boy

to run a mill and manage the machinery, etc." The rule laid
down by his Honor for measuring the defendant's duty, as-
suming that the jury should find that the deceased was em-
ployed to manage the machinery or to run the engine, was
clearly correct. The complaint of the defendant is that he
assumed the very fact in issue to have been shown; that he
should have said to the jury that if they found from the
testimony, etc. We are of the opinion, upon a careful exami-
nation of the entire charge, that his Honor inadvertently
fell into error in the language complained of. The form of
expression adopted by him was calculated, we think, to create
in the mind of the jury the impression that the only ques-
tion for them to decide was whether the hiring of a boy of the
age of the deceased and putting him in charge of dangerous
machinery or running an engine was negligence. If that
fact had been found by the jury, with the further fact that
he was not properly instructed or properly warned of the
danger, the instruction in respect to the law would have been
entirely correct; but when the Judge said to the jury "was
it due care to put the boy in charge of the engine without
warning?" "would a reasonable and prudent man do it, and,
if not, was that the proximate cause?—that's the question"—
he withdrew from the jury the duty of ascertaining from the
testimony whether the defendant had done the very thing
upon which the right of the plaintiff to recover depended,
which we think was an expression of opinion in regard to a
vital question in controversy. He further instructed the
jury that "If you find that the taps had been left off the
screws that hold on the throttle-cap, this was a continuing neg-
ligence on the part of the defendant, and continued up to the
time of the explosion, even though the boy might have ascer-
tained it, and if you find that to be the fact and that was
the proximate cause of the injury, you will answer the second
issue 'No.'" This instruction is correct, but his Honor

proceeded to say to the jury that "If the machinery was out of order, as contended by the plaintiff, and that defect was known to the defendant, or might by reasonable diligence have been known, that defect constitutes a continuing negligence on the part of the defendant, because it was his duty to furnish the plaintiff's intestate with safe and sound machinery, and, if that was the case, it was not contributory negligence in the boy to fail to turn the relief valve, if he did, before turning on the steam, and you will answer the second issue 'No.' " This is practically a repetition of the instruction immediately preceding, omitting, however, the very important inquiry whether such negligence "was the proximate cause of the injury." The negligence of the defendant must be the proximate cause of the plaintiff's injury to constitute an actionable wrong, and in this respect the last instruction was defective. The jury should not say that because the machinery was out of order the plaintiff was entitled to recover; they must go further and say that the machinery being out of order was the proximate cause of the injury before they can answer the issue in favor of the plaintiff. "The negligence of the defendant, no matter how great, would not of itself render it liable in damages, unless it had contributed to the death of the plaintiff's intestate." *Edwards v. R. Co.,* 129 N. C., 78.

For these errors the defendant is entitled to a
New trial.