WESTFELDT v. ADAMS.

(Filed May 27, 1904).

1. ACKNOWLEDGMENTS—*Deeds—Probate.*

Battle's Revisal, ch. 35, sec. 14, providing for the acknowledgment of deeds of married persons before probate judges, does not apply to deeds of unmarried men.[1]

2. EJECTMENT—*Hearsay Evidence—Boundaries.*

It is not competent in an action of ejectment for a witness to state that his father pointed toward the land in question and said the reason he did not enter it was that it was covered by other grants, this being hearsay evidence.

3. WITNESSES—*Ejectment—Boundaries.*

The compensation received by a surveyor of land involved in ejectment is not such a disqualifying interest as to render proof of a declaration by the surveyor as to the boundary incompetent.

4. IMPEACHMENT OF WITNESSES — *Evidence — Corroboration of Witnesses—Supreme Court, Rule 27.*

The rule of the supreme court relieving the trial judge of the duty of instructing specially upon the nature of corroborative or impeaching evidence, unless specially requested, does not apply to a case where the trial judge in his charge marshals impeaching evidence along with substantive evidence without calling attention thereto.

ACTION by G. R. Westfeldt and others against W. S. Adams and others, heard by *Judge W. A. Hoke* and a jury, at Fall Term, 1903, of the Superior Court of HAYWOOD County. From a judgment for the plaintiffs, the defendants appealed.

*F. A. Sondley* and *J. C. Martin,* for the plaintiffs.
*Shepherd & Shepherd, J. J. Hooker, Moore & Rollins* and *Merrimon & Merrimon,* for the defendants.

MONTGOMERY, J. This case was before this Court at its August Term, 1902, and is reported in 131 N. C., 379. It is an action in the nature of ejectment. Several of the most important questions raised by the defendants' appeal on the former hearing and decided against him are before us again on the present appeal of the defendant. The plaintiffs, to make good their allegation of title to the land described in the complaint, introduced in evidence a grant from the State to E. H. Cunningham, dated April 28, 1860, and numbered 2,325; a duly certified copy of a proceeding in voluntary bankruptcy of Cunningham, and a deed from F. S. H. Reynolds, assignee of the estate of Cunningham, bankrupt, to George Westfeldt, dated April 24, 1869, registered in Swain County, September 16, 1881, for the land covered by the grant numbered 2,325. That deed was without a seal. In their answer the defendants denied that the plaintiffs were owners of the land, and in further defense they averred that if the grant from the State to Cunningham embraced the land described therein, yet that the defendants were the owners of two tracts of land of one hundred acres each situated within the boundaries of the land described in the grant of the State to Cunningham. That claim of the defendants rested, as they averred, upon two State grants, No. 1,545 and No. 1,546, of prior date to that of the grant to Cunning-

ham, to William R. and John McDowell, respectively. The defendants in their first appeal struck at the deed from Reynolds, the assignee in bankruptcy, to Westfeldt, contending that it was void because neither the official nor private seal of Reynolds was attached to his signature, and the same question is raised on the present appeal.

The Court in its former decision recognized the rule of law that a plaintiff might recover in an action of ejectment upon an equitable title, and also recognized the rule of practice that where it was necessary to establish equitable owner- ship by extrinsic testimony, the facts and circumstances should be particularly set out in the complaint. But the Court there held that in cases where the naked legal title was outstanding in another, or where, upon the face of the record evidence introduced on the trial, a court of compe-tent jurisdiction would, in an *ex-parte* proceeding, and as a matter of course, order the correction of a mere formal defect in a deed. For instance, it is not necessary to set forth the particular facts constituting the equity in the proceedings, and the Court cited *Geer v. Geer,* 109 N. C., 679, on that point. The defendant did not except to that proposition of law or to that rule of practice, but contended then, and contends now, that the deed from Reynolds, the assignee in bankruptcy, to Westfeldt does not fall within the principle decided in *Geer v. Geer.* In the case as first reported we decided that it did, and we refer to the reasons for our decision to those given in the case as formerly reported. In addition, we will say that the proceedings in bankruptcy under the Act of 1867 were conducted through the several United States District Courts. The assignee, by virtue of his election or appointment, was vested with the title and right of possession of the property, real or personal, of a bankrupt. The assignee was also authorized by the law to make sale of the property of a bankrupt, the pro-

ceeds to be distributed among his creditors. Reynolds, the assignee, sold the land to Westfeldt, received the purchase-money and the same was distributed as by law required. In executing the deed to the purchaser the assignee omitted to affix his seal. Can there be a doubt that a Judge presiding over the Court under whose jurisdiction proceedings in bankruptcy were conducted would hesitate for a moment to order a commissioner to execute a deed to the purchaser, in cases where the assignee was dead or had discharged his duties and closed his trust? We think not. In the former appeal the defendant contended that the probate of the deed from Reynolds, assignee, to Westfeldt was fatally defective in that it was had before the Judge of Probate of Buncombe County, the land being situated in the county of Macon, afterwards in the new county of Swain (formed in 1871, Pub. Laws 1870-'71, chapter 94), and the signature of the Probate Judge not being attested by the seal of his office or by his private seal. The Court there held that neither at the time of the probate of the deed, May, 1869, nor when it was registered in Swain County on September 16, 1881, did the law require the certificate of the Probate Judge to be attested by the seal of the probate officer, and the Acts of 1868-'69, chapter 64, and Batt. Rev., chapter 35, section 5, were referred to. But the defendants now insist that the Court made a mistake in the former opinion in its citation of chapter 64 of the Acts of 1868-'69, and refer us to chapter 277 of the same session, ratified a month later than chapter 64. The defendant contends that the last-mentioned act, in full effect when the probate of the deed was had before the Judge of Probate of Buncombe County, required the official seal of that officer to be affixed to the probate. We knew at the time of the former decision in this case, as we know now, that chapter 277 of the Acts of 1868-'69, brought forward in

WESTFELDT v. ADAMS.

Battle's Revisal, chapter 35, section 14, referred to the
probate of deeds only where the right, title and interests
of married women were concerned and attempted to be con-
veyed.    Those acts did not affect the deeds of unmarried
men.

The defendants in undertaking to locate grants 1,545
and 1,546, under which they claimed, introduced many wit-
nesses whose evidence tended to prove that the lands em-
braced in those grants were situated on Little Fork Ridge,
and there was a contention between the plaintiffs and the
defendants as to where Little Fork Ridge was—the defend-
ants contending and introducing much evidence to show
that it lay in the Smoky Mountains between Sugar Fork
Creek and Haw Gap Creek, and that it occupied all the
space between those two streams, running down to the water's
edge on both sides and extending back in a northerly direc-
tion to and connecting with what is known as Jenkins' Trail
Ridge.    The defendants introduced evidence to show that
a mountain oak, the beginning corner of one of their grants,
stood upon this Little Fork Ridge as claimed by them.    The
plaintiffs introduced evidence tending to show that Little
Fork Ridge was located two or three miles north-west of
the ridge as it is located and claimed by the defendants,
and that it divided Eagle Creek from Paw-paw Creek, and
undertook to show that there was a mountain oak marked
as a beginning corner on the ridge claimed by them to be
Little Fork Ridge.    To show that Little Fork Ridge was
located where the defendants claimed it to be, his Honor
allowed a witness for the defendants, Joel Crisp, to testify
that when he was a boy, fourteen or fifteen years old, his
father, who was dead at the time of the trial, told him
while they were standing on the east side of Haw Gap
Creek the names of the ridges, creeks and streams, and
showed him the edge between Sugar Fork and Haw Gap

Creeks, and that his father said that ridge was Little Fork
Ridge.    The witness was then asked by the defendants if
on that occasion his father had spoken to him of a tract of
land called by the name of Hill or Munday land lying on
Little Fork Ridge.   The witness answered "Yes," and then
in that connection the counsel for the defendants submitted
to the Court in writing that they proposed to show by this
witness that the father then pointed right in the direction of
the land in controversy, and said: "The reason I did not
enter those lands was that they were covered by older grants,
the Hill or Munday lands, or the Hill and Munday lands,"
which one, the witness said he did not remember.   The wit-
ness further said that the ridge to which his father pointed
was about two and a half miles long, and the witness did
not know which Hill his father referred to, nor where the
lands were.    Jonathan Hill, introduced by the defendants,
had testified that the entries for the two tracts of land
described in the defendants' grants had been made by Mun-
day in his (Hill's) name, and that he, Hill, had no interest
in them.

His Honor refused to allow the witness Crisp to testify
to what his father had said when he was pointing toward
Little Fork Ridge.    It was proper in his Honor to admit
the testimony of Crisp as to the location of Little Fork
Ridge.    It was most natural evidence for the defendants,
because it bore directly on the question of the location of
their grants, and because the plaintiffs had introduced evi-
dence the tendency of which was to show that the land
claimed by the defendants was away and out of the neighbor-
hood of Little Fork Ridge as claimed by the defendants.
But the attempt of the defendants to show the boundaries
and the location of a tract of land by the hearsay evidence
of a disinterested and deceased person, who had pointed
in the direction of lands in the distance and said that the

reason he did not survey or enter those lands was because they had been entered by some one else, is altogether another matter. We are of the opinion that his Honor ruled correctly in holding that the evidence was incompetent and in refusing to receive it. The defendants, in their brief, insist that the evidence was as competent as that of Francks, who, on the former trial, was allowed to testify that his deceased father had told him about the beginning corner of a tract of land while they were twenty-five miles from the land, and although Francks, the witness, never identified the land afterwards. We do not see the similarity between the evidence of Francks (the subject of consideration in the former appeal) and that of the testimony offered on the part of the witness Crisp in the present appeal. Crisp's evidence was not offered to show *where a boundary line* was, or the *beginning point* of a tract of land, but to prove boundary or location by a pointing by one deceased in the direction of the land, the boundaries of which were in dispute. In the matter of Francks' testimony the evidence went to fixing the corner of the plaintiff's land. If in Francks' testimony he had said his father, who was dead and had no interest in the land, had told him on the spot that a certain point was the beginning point of a certain tract of land, there could have been no doubt, under all our decisions, of the competency of the evidence. But the conversation between Francks and his father about the beginning point of the tract of land in dispute occurred twenty-five miles away from the land; Francks never identified it himself. The Court said, there: "The particular witness Francks had never afterwards actually identified the boundary as fitting the description given by the deceased declarant. *Other* witnesses, however, testified that they found a tree at the alleged beginning corner answering the description given by the deceased to the first witness. If the beginning corner had

not afterwards been identified, then the testimony of Caber and Francks would have been inadmissible; because it was afterwards found we think it was competent." That ruling was going just as far as we thought the Court ought to go in reference to the competency of hearsay evidence on the question of boundary, and we are not disposed to carry it further.

There was an exception made, but not urged on the argument, that the declaration of McDowell, the surveyor, as to boundary was incompetent because he had received $50 as compensation for pointing out the beginning corner of the tract by the plaintiffs. The Judge held that the disqualifying interest must be an interest in the subject-matter of the controversy, and that the compensation the witness got as a surveyor in fixing the beginning point in the survey did not make the declaration incompetent. This ruling was correct.

There is one error, however, committed in the trial below, and which is pointed out in the appeal of the defendants, on account of which a new trial must be ordered. It was an error, however, more of inadvertence than a misapprehension of the law. The trial of the case consumed more than two weeks. One hundred and twenty-five witnesses were introduced and eleven days were taken up in hearing the evidence. Many perplexing questions of law were raised on the trial. The verdict was for the plaintiffs, and it was for them on the first trial, and we dislike to send this case back for a new trial. But under the law and our precedents it must be done.

The plaintiffs, to locate the land covered by their grants, introduced evidence tending to show that the beginning corner was at a single chestnut tree on the left-hand side of the Jenkins Trail, just above the Flint Spring. The defendant, to show that the single chestnut tree near the Flint

Spring was not the true beginning point of the plaintiffs' grant, introduced J. B. Crisp, who testified that he was a chain-bearer upon the survey made when the plaintiffs' grants were issued, and that the surveyors did not begin at the single chestnut tree ("H" on the map) as claimed by the plaintiffs, but at a chestnut marked on the map "Double Chestnut" about one mile north-east of the single chestnut, the point claimed by the plaintiffs as the beginning point. The plaintiffs then put in evidence an affidavit made by Crisp before the trial, in the following words: "Personally appeared before me, the undersigned justice of the peace, John Bennett Crisp, and maketh oath that the chestnut tree on the left-hand side of the trail leading from Flint Spring to Haw Gap in the Smoky Mountains is the beginning of four 640-acre tracts of land which he was chain-bearer for, which was surveyed for Daniel Lester; also to the place where a white-oak stood in the south boundary line of said two tracts." Crisp on cross-examination denied that he had made the affidavit, and denied that he had ever told anybody that the single chestnut tree, the beginning point as claimed by the plaintiffs, was the beginning point or the corner of said tracts, or that the white-oak was in the line of any of the tracts. A witness named Buchanan testified that he had heard John B. Crisp say the same thing as to the beginning corner of the land that was contained in the affidavit alleged to have been made by him. When Buchanan's evidence was received, his Honor told the jury that it was received by him and that they could only consider it as evidence for the purpose of contradicting Crisp; but when his Honor came on to instruct the jury as to the plaintiff's contention that their beginning corner was at the single chestnut just above the Flint Spring on the Jenkins Trail, in reciting the evidence for the plaintiffs in that contention he called the attention of the jury to the substantive evi-

dence of many witnesses, and amongst the number he mentioned the evidence of the witness Buchanan, without directing their attention to the evidence of this witness as being purely contradictory of that of Crisp and going to impeach his evidence-in-chief. After reciting what the other witnesses for the plaintiffs had said as to the beginning point of the plaintiff's land, his Honor went on to say: "A witness named Buchanan testified that he had heard John B. Crisp, a chain-bearer, say that the Westfeldt corner was just above Flint Spring, and he also spoke of a white-oak to the south as one of the Westfeldt corners. In not calling the attention of the jury, at that juncture of the trial, and in connection with the recital of the substantive evidence of the various witnesses of the plaintiffs as to the beginning corner, to the fact that the evidence of Buchanan was not substantive evidence on the subject of boundary, but only to impeach Crisp and to contradict his evidence, there was error. *Sprague v. Bond,* 113 N. C., 551; *Bullinger v. Marshall,* 70 N. C., 520; *State v. Parker,* 134 N. C., 209.

The Court, at this term, has amended rule 27 by adding at the end thereof: "When testimony is admitted, not as substantive evidence but in corroboration or contradiction, and that fact is stated by the Court when it is admitted, it will not be ground for exception that the Judge fails in his charge to again instruct the jury specially upon the nature of such evidence, unless his attention is called to the matter by a prayer for instruction; nor will it be ground for exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks, at the time of admission, that its purpose shall be restricted." The amendment was made on March 16, 1904, and went into effect on that day. This case was tried at September Term, 1903, of the Superior Court of Haywood County,

but if the case had been tried after the amendment to rule 27 the error we have pointed out would not be cured thereby. The amendment would not apply to a case where the Judge below should instruct the jury at the time of the admission of the evidence that they should consider it only as corroborative, or for purposes of contradiction, if he afterwards in his charge should marshal that evidence along with the substantive evidence in the case. If he afterwards makes allusion to such evidence in his charge to the jury, he must again call attention to its nature.

For the error pointed out there must be a
New Trial.

CLARK, C. J., and WALKER, J., concur in result.