FESTUS WEST v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 26 September, 1917.)

1. **Railroads — Master and Servant — Public Crossings — Flagman — Interstate Trains—Commerce.**

  The plaintiff was employed by the defendant railroad company to warn with flags by day, and with a lantern by night, pedestrians of approaching trains at a public crossing in a town, and by signalling to the engineer of an approaching train, and to coöperate with him in the movement of the train before making the crossing, so as to prevent injury to the persons on the train and the people using the crossing. There was conflicting evidence, and the plaintiff, having thus coöperated with the conductor on an interstate train, was injured by the defendant's negligence when he had crossed the platform on this train and was on the lowest step of the car for the performance of his duty on the other side, with reference to a second track there. Upon the trial in the State Court under the Federal Employers' Liability Act, the evidence is sufficient upon the question of employment in interstate commerce, and to sustain a verdict in plaintiff's favor thereunder, or under our own statute of like effect. Laws of 1913, chap. 6.

2. **Evidence—Corroboration—Changed Conditions—Admissions — Railroads.**

  Evidence in corroboration of plaintiff's testimony, in his action to recover damages for a personal injury, involving the alleged negligent condition of the defendant railroad company's track at the time, that since the injury the condition of the track had been changed, is competent, when it appears that it was confined to within proper limits and was not permitted to be considered in the light of an implied admission of negligence.

CIVIL ACTION tried before *Stacy, J.,* at the February Term, 1917, of HARNETT.

Action for injuries caused by negligence.

The evidence tends to show that on 23 December, 1914, the plaintiff was employed by the defendant as street crossing flagman at Broad Street, in the town of Dunn, which runs east and west and intersects the main line of defendant's railway, running north and south, at right angles. At the crossing, the defendant has two main line tracks and one warehouse or pass track; the duties of plaintiff were to warn persons traveling Broad Street of the approach of trains about to cross said street; this was done by means of a flag which the plaintiff carried in his hand by day and of a lantern by night; plaintiff's instructions were, and it was his custom upon the approach of a train, to stand on the side of the track upon which the engineer sat in his cab. On 23 December, 1914, upon the approach of train No. 89 from the north, it being an interstate passenger train, plaintiff was standing on the west side of the track and gave persons traveling on Broad Street warning of the coming of the train; as soon as the train stopped, being then on the crossing, the plaintiff handed his flag to Will Taylor, who was

standing ón the west side of the track, and himself went upon the platform of the standing train, the evidence being conflicting as to whether he went in the train to assist or to see a passenger, or, as he himself testified, made his way as rapidly as possible over the platform, which was crowded with people, to the other side of the train, which was a part of his duty, plaintiff stating, as a witness, that he was going across the platform for the purpose of clearing the second main line track on the east side of said train of all persons who might be standing upon said track, although there was no train approaching upon said second track in so far as he could see.

The plaintiff's evidence tends to show that he had made his way across the platform and had descended the steps on the east side of the train, and had reached the lowest step, occupying then his proper position, when, as he was in the act of stepping on the ground, the train started suddenly and with a jerk throwing plaintiff off. The bottom step struck his back, rolled him under the train, one of his legs being cut off by the wheels of the train. He received other minor injuries.

The evidence on the part of the defendant tended to show that plaintiff had gone into the train; that he came out after the train had started, and attempted to get off, running for some time while holding to the grabiron, and falling under the train. The plaintiff's evidence further tended to show that the east main line track had recently been laid. The ground was uneven between the cross-ties when he was hurt, but that the same had been remedied since the accident by elevating the track across Broad Street some nine inches or more. There was evidence tending to show that all the time the plaintiff was in the discharge of his duties as flagman, when he was on the ground and when he crossed over the steps and platform in his attempt to reach the east side of the track, and that he was assisting or helping the engineer to move his train safely at the time he was injured.

Under the evidence and charge of the court, the jury rendered the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiff by his own negligence contribute to his injuries, as alleged in the answer? Answer: "No."

3. Was the defendant engaged in interstate commerce, and was the plaintiff employed by the defendant in interstate commerce, at the time of the plaintiff's injury? Answer: "Yes."

4. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: "$7,500."

Judgment was entered thereon, and defendant appealed.

*E. F. Young and R. L. Godwin for plaintiff.*
*Rose & Rose and Clifford & Townsend for defendant.*

WALKER, J., after stating the case: It was admitted that the train from which the plaintiff fell had come from the State of Virginia into this State, and therefore was being used in iterstate commerce. The principal question discussed before us was whether the plaintiff, at the time he was injured, was employed in interstate commerce, as he alleged in his complaint, there being evidence to support the allegation, which tended to prove that he was a flagman at Broad Street crossing, in the city of Dunn, and his duties were to flag trains approaching from either direction, so that they might proceed safely to and beyond the crossing, and also that pedestrians could be properly warned that a train was coming to the crossing, so that they might protect themselves. He was required to stand on the side of the train where the engineer sat in his cab, so that he could coöperate with him in the movement of the train through Dunn, and thereby prevent any injury to the persons on the train and the people using the crossing; and it was while he was performing his usual duties, and after he had flagged the engineer on the west side of the track, that he passed over the platform of the car to the other side to further perform his duty. While doing so, he was thrown from the lowest step of the platform on the east side by a sudden and violent jerk of the train, and his injuries were the result of the fall.

The case was tried under the Federal Employers' Liability Act of Congress. We cannot perceive why the plaintiff was not employed in interstate commerce at the time he was hurt, as he was directly connected, by the nature of the duties assigned to him, with the movement of the train from which he fell, and was, of course, on the train when the accident occurred. It seems to us that these facts, not seriously disputed, in this phase of the case, bring it squarely within the operation of the Federal law. The very question we have here was virtually passed upon by us in the recent cases of *Sears v. A. C. L. R. R. Co.,* 169 N. C., 447; *Raines v. So. Ry. Co., ibid.,* 189.

In the *Sears case,* we said that "the first question may well be disposed of by a bare reference to the evidence. . . . The engine which was to carry the train to Florence, S. C., had steam up, and R. C. Garland, the engineman, was in the cab, and moved the train under signals from the plaintiff. This would seem to properly characterize this train as one engaged in interstate commerce; and while the plaintiff was employed on a local shifting engine, any injury to him through the negligence of the defendant while he was engaged in cutting out the 'bad order car' from this train is regarded in law as one received while he was 'employed in such commerce.'" We referred to *Pedersen v. D. L.*

WEST *v.* R. R.

*and W. R. R. Co.,* 229 U. S., 146, where the Court held that the plaintiff, who was injured by the negligence of the defendant in that case while he was carrying bolts to the workmen on a bridge, which was part of the defendant's railway, and was being repaired in some of its parts, was employed in interstate commerce. Defendant was an interstate carrier, its line extending through several States. It was held that upon these facts the defendant was engaged in interstate commerce, and that plaintiff, who was run down and injured by an intrastate train while carrying the bolts was employed in interstate commerce at the time of his injury.

The Court said in the *Pedersen case:* "The statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency . . . in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is, Is the work in question a part of the interstate commerce in which the carrier is engaged? . . . Of course, we are not here concerned with the construction of tracks, bridges, engines or cars, which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such. True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce."

But the *Raines case, supra,* decided by us and reported in 169 N. C., 189, is precisely in point. It was the case of a flagman who was giving signals to the engineer of an interstate train, and while doing so was struck by the train and killed. The case was tried under the Federal Act, and, with reference to this feature of the case, we said: "The intestate at the time of his injury was employed in interstate commerce, and the case was, therefore, properly tried under the Federal Employers' Liability Act." This is decisive of the present case.

Other tests by which to determine whether a plaintiff was, at the time of his injury, employed in interstate commerce are stated in the following authorities, from which we make several extracts:

"The question for decision is, Was Shanks at the time of the injury employed in interstate commerce within the meaning of the Employers' Liability Act? What his employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered when the injury was suffered. Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see *Swift & Co. v. United States,* 196 U. S., 375, 398; 49 L. Ed., 518, 525; 25 Sup. Ct. Rep., 276), and that the true test of employment in such commerce in the sense intended is, Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" The Court then gives several illustrations, and among them this one: "Where a fireman is walking ahead of and piloting through several switches a locomotive which is to be attached to an interstate train and to assist in moving the same up a grade," citing *N. and W. R. R. Co. v. Earnest,* 229 U. S., 114, which is almost identical in its facts with our case.

"But other employees of common carriers by railroad are not within the purview of the Federal Employers' Liability Act unless they are actually engaged in interstate transportation; that is, in transporting passengers or freight from one State to another, or in such work that is so closely related to interstate transportation as would be in a practical sense a part of it. The interstate status of an employee in each case must depend largely upon its own particular facts." *Minn. and St. Paul R. R. Co. v. Winters,* 13 N. C. C. A., 1135.

The case of *Graber v. D. S. and A. R. R. Co.,* 159 Wis., 414, is a valuable one on this question. We quote a part of the syllabus:

"1. Where the facts are undisputed, the question whether a particular service or engagement therein is of interstate character is one of law; but when material facts bearing on that question are in dispute, they may properly be determined by the jury, leaving to the court the legal conclusion to be drawn therefrom.

"2. A railway employee while actually performing a service essential to or so closely connected with the business of interstate commerce as to be substantially a part of it, though not necessarily exclusive of all *intrastate* features, is employed in *interstate* commerce within the meaning of the Federal Employers' Liability Act.

9—174

"3. If the particular service in progress at the time of the injury, in any substantial part, is within the interstate field, then the Federal law rules the case if either party so elects; but this is a right which may be waived, expressly or impliedly."

The judge in our case submitted the disputed questions of fact to the jury as to the nature of plaintiff's employment at the time of his injury, and the jury decided adversely to the defendant.

There are other decisions of the highest Federal Court which strongly support our view, but it is unnecessary even to cite them, as those already considered are quite sufficient to show that the question has been finally settled by them upon substantially similar facts. The plaintiff coöperated with the engineer in protecting the train and facilitating its movement through Dunn. He performed substantially and to a certain extent, though not exactly in the same way, the task of the flagman on the train, whose duty it is to safeguard it from other trains which are approaching it, in order to prevent collision. But if plaintiff could not recover under the Federal Act, because not employed in interstate commerce at the time of the injury, we think he had the right to do so under our State law, as we decided in *Sears v. R. R. Co., supra.* His complaint is broad enough in its allegations to include a case under the State act (Laws of 1913, chap. 6), and there is ample evidence to substantiate it. But he is not put to such a necessity, as we are of the opinion that, by allegation and proof, he has clearly made out his case in the other aspect of it.

Whether he went upon the train to see a man, or for the performance of his duty, was a question of fact which the jury has decided against the defendant. There was no tangible evidence of contributory negligence and no plea of "assumption of risks." The jury found all issues against the defendant. The case is a plain and simple one. We cannot interfere with the jury in finding facts upon evidence sufficient to warrant their verdict. The presiding judge submitted the case to the jury in his charge with singular clearness and impartiality. There was nothing omitted that should not have been omitted, and nothing expressed which should not have been said, but all of it, after a most searching and critical examination, is considered by us to be entirely free from any error in law or fact. The jury have simply decided against the defendant the crucial questions or those upon which alone defendant could have hoped for favorable responses.

The question of evidence raised by the defendant, which is, that the court admitted incompetent evidence as to the condition of the track and road-bed at the time of the injury, and its reparation since that time, is founded upon a misapprehension of the true nature of that evidence. It was not admitted as an implied admission of negligence on the part of the defendant, but as tending to corroborate the plaintiff,

as a witness in his own behalf, as to their condition at the time of the accident, and the instructions to the jury clearly show that the evidence was let in solely for such purpose. In that view, it was competent, as we have held. *Tise v. Thomasville,* 151 N. C., 281; *Pearson v. Clay Co.,* 162 N. C., 225; *Boggs v. Mining Co., ibid.,* 393; *Shaw v. Public-Service Corp.,* 168 N. C., 611.

The other exceptions are unimportant, or formal, and require no special discussion.

The case was correctly tried, and we therefore affirm the judgment.

No error.