BRUCE HOLT v. OVAL OAK MANUFACTURING COMPANY.

(Filed 5 March, 1919.)

1. **Appeal and Error—Remarks of Counsel—Prejudice—Correction—Instructions—Attorney and Client.**

   While improper and prejudicial remarks by counsel to the jury upon matters not embraced in the issues are ordinarily sufficient grounds for the granting of a new trial on appeal, the prejudice thus created may be removed by the prompt and clear instructions of the trial judge bearing thereon; and when it appears from the evidence, charge and circumstances of the case that the verdict had not been prejudicially influenced, a new trial will not be ordered. *Featherstone v. Cotton Mills,* 159 N. C., 429; *Norris v. Cotton Mills,* 154 N. C., 480, cited and distinguished.

2. **Master and Servant—Employer and Employee—Safe Appliances—Minors —Duty of Master—Instructions.**

   Where there is evidence tending to show that plaintiff, a 17-year-old lad, was instructed by his superior to operate a rapidly revolving power-driven saw at a grooving machine, against his protest, being inexperienced therein; that the machine, being worn, shaky and antiquated, without proper guards, and being at the time jarred by the slipping of a belt at a neighboring machine, causing the wood thereon to fall upon the revolving saw and thrown violently against the plaintiff, to his injury; that the plaintiff had received no instructions as to operating the machine, and no warning as to its dangers: *Held,* the charge of the court as to the duty of the employer to furnish to his employee reasonably safe appliances to do the work required of him, and to instruct a lad of his age in doing work of this character, is approved. *Ensley v. Lumber Co.,* 165 N. C., 687; *Adkins v. Madry,* 174 N. C., 187, and like cases, cited and applied.

3. **Evidence—Contradiction—Negligence—Subsequent Repairs—Appeal and Error.**

   Where there is evidence tending to show that the plaintiff, an employee of the defendant, received a personal injury, caused by the failure of the latter to provide a proper guard for a power-driven saw at a bench he was required to work, and on defendant's behalf that it had provided it, it is competent for the plaintiff to contradict the evidence of the defendant with testimony that these guards had been placed there after the injury; and where this testimony was properly confined strictly to the purpose of contradicting the defendant's testimony or of corroborating the plaintiff's, and was not received as evidence of negligence, no error is found therein on appeal. Competency of such evidence discussed and explained by WALKER, J.

ACTION tried before *Daniels, J.,* and a jury, at September Term, 1918, of LEE.

The plaintiff was employed by the defendant to fire the boiler in its mill, and was ordered, on the day he was injured, to take the place of the man who operated the rip-saw at the bench, or grooving machine, in which it was placed. This saw revolved with great rapidity, 5,000 revolutions to the minute, and there was evidence tending to show that there

HOLT *v.* MANUFACTURING CO.

was no guard or other appliance to keep the boards from falling on the saw while it was in motion, and that the machine in this respect was not constructed like those of the same kind which were approved and in general use in other mills, and which had protective guards to prevent such accidents as the one in question. The plaintiff was 17 years old when he was injured, and, according to his testimony, had objected to working at the machine, as he was afraid of being cut by the saw, but he was told it was safe and to go on with the work. There also was evidence on defendant's part that there were guards on the machine to hold the boards in their proper position, but plaintiff disputed this and stated that they were put there after he was injured. He had worked at the groover only half a day when he was hurt. He testified, in part, as follows: "I am the plaintiff in this action, 19 years old, and live at Broadway, N. C. About a year and a half ago I worked at Siler City, and was there about a year and a half. I worked about two months with the Oval Oak Manufacturing Company, being hired by Mr. Stone, the superintendent. Mr. Stone looked after the plant and hired and discharged the men. I was firing the boiler, and the man who operated the grooving machine was out, and Mr. Stone put me to work on it. I was scared I'd get my fingers cut, and told him so. He told me there was no danger in the machine. He did not tell me any of the dangers of the machine. He gave me no instructions, but in his presence the fellow that had operated the machine told me to pile up the blank pieces, or work, between the standards and the saw, four wide and four deep, and when he finished, Mr. Stone said, 'That will be right; it will make it out on the truck even.' The machine was a flat table, with a saw coming up through the top of the table, with two pieces on each side of the saw to run the timber up between—to hit the piece exactly in the center—to groove the sides of the washboard. The pieces were about an inch by half an inch and about a foot long. There were no rollers on the table to draw the pieces on the saw. You pushed the piece with your hands, pushing the piece with your thumb and holding it down with your left hand. There were standards, between which I was told to put the finished pieces, but no standards between the blank pieces to be worked and the saw. I was instructed to put the blank pieces between the standard and the saw. There were no standards to protect the work on the side of the saw. I stacked the blanks up as I was instructed to do. I stacked a pile of the pieces up and turned to get my position, and as I did so some of the pieces rolled over on the saw and hit it, and that is the last I know. Just at that time the machine speeded up. I heard it shaking and rattling, and I know of my own knowledge that this was caused by the throwing of a belt on some part of the machinery. The engine caught up slack and shook the machine. I saw the pile as it started to fall and

saw the piece as it started toward me from the saw. The machine was pretty shackly."

Plaintiff here described his wound, which was very severe and caused him great suffering and permanent injury. He then further testified: "I had worked at woodworking plants about two years, but had never operated a machine like this before; never operated a groover. You had to push the blank with your right hand, between little wooden guides, onto the saw and hold them down with your left hand. There was a piece at the end to stop the blank at the right place, and it was grooved only to about six inches of the end. There were four little wire standards on the machine; on the back side you put the timber you had finished and on the far side your raw timber. The finished product was laid over on the other side of the raw material between the little standards. In operating you picked up an unfinished piece next the saw, put it through, and placed it over between the standards. I do not know whether or not a piece dropped diagonally across the guides would touch the saw; I did not mess with it long enough to find out. Mr. Stone showed me how to push the blanks through and to pick them up. I had operated the machine only a half day before and returned to its operation that morning. I did not whistle to Mr. Coggins after I was hurt or have any conversation with him. I do not remember anything that happened until I regained consciousness in the hospital at Greensboro about four weeks afterwards. After the second operation was performed in Greensboro, about September 10th, I was able to go to the moving picture show, and on the 23d I left the hospital. On January 9th I returned to the hospital. I was not fat and weighed only about 120 pounds. I had a piece of gauze in the wound, because the doctor had advised me to do so. In May, after this suit was started, I went to the hospital for another operation, when the wound was closed, and remained there nine days. I then came home. At the time I was hurt I wasn't operating the stock. I was piling stuff and went to turn around. I had used all the timber up and was putting up some more."

(Stick is shown witness.) Do you know whether or not this is the stick which hit you? "No, sir. The stick looks like the ones I handled. Mr. Coggins was working a good ways off. The pieces went into the machine the wide or flat way. I have seen the machine since then. They were not using it when I went to Siler City again. They were using a moulder for this work, through which the piece passed entirely, coming out at the other end. Mr. Stone did not instruct me where to stand. The pieces were stacked at the right-hand side and it was necessary for me to get into the position I was in when hurt in order to get the material and stack it there. The piece which fell on the saw and was thrown back was one of sixteen pieces which were stacked up at the right of the saw."

· The allegations of the plaintiff as to the construction of the groover and other material matters were denied by the defendant and testimony introduced to show that there was no negligence either in the construction of the machine or in the failure to give proper instructions as to its operation, and further that the injury was caused by the plaintiff's own negligence.

The jury returned a verdict for the plaintiff upon all the issues, negligence and contributory negligence, and assessed his damages at $5,000. Judgment was entered thereon and an appeal taken by the defendant.

*Seawell & Milliken for plaintiff.*
*Wilson & Frazier for defendant.*

WALKER, J., after stating the case: The remarks of counsel with reference to the insurance company by which the defendant was indemnified were not proper, as there was no legal basis for the suggestion, because they were irrelevant to the issues and were calculated to prejudice the jury and to divert the minds of the jurors from the material issues. If the judge had not removed any such prejudice by his clear instructions to the jury as to what were the only issues we would be authorized to grant a new trial, but we are satisfied that the caution of the judge to the jury, which came immediately after the allusion to the insurance company was made, had the desired effect and placed the parties at arm's-length in the very beginning of the trial. We also are convinced that no actual prejudice resulted from the remark, as the verdict upon the issues of negligence was well warranted by the evidence and the damages allowed were very moderate and small in view of the serious, if not horrible, injury inflicted and the racking pain suffered by the plaintiff, which may continue and perhaps will be permanent. To be deprived of the comfort resulting from the normal operation of his physical and bodily functions is a dreadful affliction. Deducting the medical and hospital bills, which were very large, from the amount of damages, the balance was an exceedingly small compensation for the damage done, the painful operations undergone and the long period of confinement and loss of earnings.

With reference to the remarks of counsel this case is not altogether like *Featherstone v. Cotton Mills,* 159 N. C., 429, and *Norris v. Cotton Mills,* 154 N. C., 480, for the inquiries there were not necessarily foreign to the case. In the former case, which may in one aspect apply here, the Court held that on the facts as presented both the questions asked of the jurors, the same being as a rule competent, and that addressed to defendant's counsel were matters which must be left largely to the discretion of the court below, and it must be presumed that the character and good

sense of the jurors selected, when they are properly cautioned, have protected them from improper bias, or that any tendency in that direction has been effectually checked and corrected by the learned and impartial judge who presides at the trial.

In *Lytton v. Mfg. Co.,* 157 N. C., 331, the evidence of the insurance was admitted and the ruling was reversed by this Court, and therefore it does not apply, as in our case the judge intervened and is supposed to have neutralized the prejudice if any had resulted. The penalty for such remarks when not properly and fully corrected by the court and all prejudice removed is a new trial, as was held in *Starr v. Oil Co.,* 165 N. C., 587, where we said : "Courts should be very careful to safeguard the rights of litigants and to be as nearly sure as possible that each party shall stand before the jury on equal terms with his adversary, and not be hampered in the prosecution or defense of his cause by extraneous considerations which militate against a fair hearing."

And again, to the same effect, in *Deligny v. Furniture Co.,* 170 N. C., at p. 189, we held that whenever such questions are asked, if they are irrelevant to the controversy and have a tendency only to prejudice one side or the other, the presiding judge should act promptly in preventing any such result and take drastic measures to do so if necessary. When it is clear that either of the parties resorts to such questions to gain an unfair advantage it is done at the sacrifice of the verdict, if he succeeds in securing one, on account of the very dangerous character of the questions. *Lytton v. Mfg. Co., supra.* The subject is fully discussed in the cases we have cited and needs no further elaboration.

In this case we see no reason for such a course. Counsel here may not have intended any wrong, and we can draw no inference that they did from what was said. They may have asked the question for a legitimate purpose to obtain information in the proper conduct of their case. But for the objection the answer might have been that defendant had no indemnity insurance. The defendant felt aggrieved by the question and prayed for the intervention of the court and relief was speedily granted by the learned presiding judge. Parties should act promptly, as was done here, in the assertion of their rights. This being an appellate tribunal, with jurisdiction merely for the correction of errors in law, it will not grant the relief which can the more readily be given by the court below in the exercise of its sound discretion, unless in very exceptional cases, of which this is not one. We caution the judges, though, to guard carefully the rights of the parties when such questions arise and to be prompt in eliminating from the trial anything tending to prevent an impartial hearing and verdict. It may be that in some cases, where the reference to insurance is clearly irrelevant and can only have the effect to prejudice the opponent, the judge should be even drastic and

order a continuance, at plaintiff's cost, as it may do incalculable damage. *Lytton v. Mfg. Co., supra.*

The other exceptions relate mainly to the charge of the court upon the question of negligence. We have examined the latter with the utmost scrutiny and have been unable to find any departure from the principles which have been settled by this Court as applicable to cases of this kind. It covered the entire inquiry and presented to the jury in clear and vigorous language every question raised by the pleadings and evidence and explained the law and the testimony of the witnesses in perfectly correct manner, as required by the statute.

The case in all of its essential features is like *Ensley v. Lumber Co.,* 165 N. C., 687, and *Dunn v. Lumber Co.,* 172 N. C., 136. It resembles the former case very much, and sufficiently so to be controlled by it. The plaintiff in that case, who was injured, was seventeen years of age and was hurt in a way and under circumstances somewhat similar to those set forth in this record. We held in the *Ensley case:* It is the duty of the master to exercise due care in furnishing his servant with a reasonably safe place to work and reasonably safe and proper machines, tools and appliances with which to do the work, and in the case of youthful or inexperienced employees this further duty rests upon him: Where the master knows, or ought to know, the dangers of the employment, and knows, or ought to know, that the servant, by reason of his immature years or inexperience, is ignorant of or unable to appreciate such danger, it is his duty to give him such instruction and warning of the dangerous character of the employment as may reasonably enable him to understand his perils. But the mere fact of the servant's minority does not charge the master with the duty to warn and instruct him if he in fact knows and appreciates the dangers of the employment, and generally it is for the jury to determine whether under all the circumstances it was incumbent upon the master to give the minor, at the time of his employment or at some time previous to the injury, instructions regarding the dangers of the work and how he could safely perform it. It is the duty of a master who employs a servant in a place of danger to give him such warning and instruction as is reasonably required by his youth, inexperience and want of capacity, and as will enable him, with the exercise of ordinary care, to perform the duties of his employment with reasonable safety to himself. 26 Cyc., 1174-1178; *Turner v. Lumber Co.,* 119 N. C., 387; *Marcus v. Loane,* 133 N. C., 54; *Walters v. Sash and Blind Co.,* 154 N. C., 323; *Fitzgerald v. Furniture Co.,* 131 N. C., 636; *Rolin v. Tobacco Co.,* 141 N. C., 300; *Leathers v. Tobacco Co.,* 144 N. C., 350. Those cases fairly illustrate the rule as it has been applied by this Court, and the *Fitzgerald case* would seem to be essentially the same in its salient facts as this one, and if not entirely so there is a

sufficient likeness between them to make it a controlling authority. The authorities elsewhere are in harmony with our decisions.

The following additional authorities, which state the law as held and applied in other jurisdictions, will be found applicable to our case:

The master may also be guilty of actionable negligence in exposing persons to perils in his service which, though open to observation, they, by reason of their youth or inexperience, do not fully understand and appreciate, and in consequence of which they are injured. Such cases occur most frequently in the employment of infants. The duty of the employer to take special cautions in such cases has sometimes been emphatically asserted by the courts. Cooley on Torts, p. 652.

The law puts upon a master, when he takes an infant into his service, the duty of explaining to him fully the hazards and dangers connected with the business and of instructing him how to avoid them. Nor is this all: the master will not have discharged his duty in this regard unless the instructions and precautions given are so graduated to the youth, ignorance and inexperience of the servant as to make him fully aware of the danger to him and to place him, with reference to it, in substantially the same state as if he were an adult. Thompson on Negligence, 978.

When the negligent act of the defendant naturally induced or offered opportunity for the subsequent act of a child, being of a character common to youthful indiscretion, and which, concurring with the defendant's earlier wrongful act, produced the injuries complained of, the defendant will in general be held liable. Children, wherever they go, must be expected to act upon childish instincts and impulses—a fact which all persons who are *sui juris* must consider and take precautions accordingly. A person who places in the hands of a child an article of a dangerous character and one likely to do an injury to the child itself or to others is liable in damages for injury resulting which is a natural result of the original wrong, though there may be an intervening agency (of the child) between the defendant's act and the injury. Bailey on Personal Injuries, 1291.

It was said in *R. R. v. Fort,* 84 U. S., 553, in which a parent was suing for injuries to his son, who was sixteen years old: "This boy occupied a very different position (from an adult). How could he be expected to know the perils of the undertaking? He was a mere youth without experience, not familiar with machinery. Not being able to judge for himself, he had a right to rely on the judgment of Collett, and doubtless entered upon the execution of the order without apprehension of danger. Be this as it may, it was a wrongful act on the part of Collett to order a boy of his age and inexperience to do a thing which in its very nature was perilous and which any man of ordinary sagacity would know to be so."

It is the duty of one who employs young persons in his service to take notice of their apparent age and ability and to use ordinary care to protect them from risks which they cannot properly appreciate and to which they ought not to be exposed. This is a duty which cannot be delegated, and any failure to perform it leaves the master subject to the same liability with respect to such risks as if the child were not a servant. For this purpose the master must instruct such young servants in their work and warn them against the dangers to which it exposes them, and he must put this warning in such plain language as to be reasonably sure that they understand it and appreciate the danger. The principles governing the employment of minors are to a large degree also applicable to the employment of inexperienced, ignorant, feeble or incompetent servants. A master having notice of any such defect in a servant, no matter what his age may be, is bound to use ordinary care to instruct the inexperienced or ignorant and to avoid putting the feeble to work too heavy for their strength, and generally to refrain from exposing them to risks which they are not fit to encounter. When the master has notice of such ignorance or inexperience on the part of the servant as would make the ordinary risks of the business especially perilous to that servant he must give the servant explicit warning of the danger and not allow him to undertake the work without a full explanation of its perils.

And this may also be said upon another branch of the case, viz., whether the groover was constructed after the pattern of those which have been approved and are in general use. There was evidence that it was not similar in the very respect which, if it had been, the boards could not have been jostled onto the saw. There also was testimony that the machine was old, out of style, and shaky or rickety, and not fit to be placed in the hands of a comparative novice with only one-half's day's experience, and working, too, under an express order to go ahead, after making objection because of the risk and being assured of safety. *Atkins v. Madry,* 174 N. C., 187.

The defendant must have known of the dangerous character of the groover. It had been in use for a long time and was out of date—evidently an antiquated model—and a trap for the inexperienced and unwary. It was also cranky from constant wear and tear. Besides, it was rendered more unsteady by the slipping of a belt from an adjoining pulley, which was operated by the same engine, which accelerated its speed and violently agitated the groover, or at least helped to cause the boards to lose their balance and fall upon the saw. There was full evidence of these and other facts, more or less showing negligence of the defendant and disproving contributory negligence. In this conflict the

12—177

case was evidently one for the jury to settle under the correct instructions of the court.

One witness, Mr. Gregson, testified that within a thirty years experience in such mills he had seen many such machines and practically every one had the groove saw protected, so that the boards could not drop down and upon the saw.

The case of *Dunn v. Lumber Co.,* 172 N. C., 137, is also directly in point and strongly supports the view that upon plaintiff's evidence, if accepted as true by the jury, which was done here, he was entitled to recover for the injury he suffered. We have so fully and exhaustively . discussed in that and *Ensley v. Lumber Co., supra,* the general and prevailing principles applicable to this class of cases that we forbear to prolong this opinion by any further reference to them.

We held in the recent case of *Ammons v. Mfg. Co.,* 165 N. C., 449, that repeated adjudications had established the rule we have stated, and that an employer of labor, in the exercise of reasonable care, must provide for his employees a reasonably safe place to do their work and supply them with machinery, implements and appliances reasonably safe and suitable for the work in which they are engaged, and to keep such implements, etc., in safe condition as far as this can be done by the exercise of proper care and supervision. *Pigford v. R. R.,* 160 N. C., 93; *Young v. Fiber Co.,* 159 N. C., 376; *Alley v. Pipe Co.,* 159 N. C., 327; *Patterson v. Nichols,* 157 N. C., 406; *Mercer v. R. R.,* 154 N. C., 399; *Marks v. Cotton Mills,* 135 N. C., 287.

The remaining objection is equally untenable. The change in the machine, by putting up guards to keep the boards in their place, was shown by the plaintiff, not to prove an admission that the groover was defective when he was hurt, but to show merely the difference in conditions in order to support plaintiff's testimony that they were not there when he was hurt by the saw hurling the board against his body. It was defendant's object to contradict him as to the guards not being there when he was operating the machine, and we have held frequently that this may be done for that purpose and not as an admission of negligence. Such evidence, for the purpose just indicated, was held to be competent in *Pearson v. Clay Co.,* 162 N. C., 224; *Boggs v. Mining Co., ibid.,* 393; *McMillan v. R. R. Co.,* 172 N. C., at pp. 856, 857, and *Muse v. Motor Co.,* 175 N. C., 466, where it is said, at p. 469: "It was competent to show that the repairs were made afterwards, not that the repairs were evidence tending to prove negligence, but simply to prove their date to contradict the defendant's witnesses," citing *Tise v. Thomasville,* 151 N. C., 281; *Westfeldt v. Adams,* 135 N. C., 591. But *West v. R. R. Co.,* 174 N. C., 125, is exactly in point and fully sustains the judge's ruling. It is there said by the Court, at pp. 130 and 131: "The

question of evidence raised by the defendant, which is that the court admitted incompetent evidence as to the condition of the track and road-bed at the time of the injury, and its reparation since that time, is founded upon a misapprehension as to the true nature of the evidence. It was not admitted as an implied admission of negligence on the part of the defendant, but as tending to corroborate the plaintiff as a witness in his own behalf as to their condition at the time of the accident, and the instructions to the jury clearly show that the evidence was let in solely for such purpose. In that view it was competent, as we have held," citing *Shaw v. Public Service Corporation,* 168 N. C., 611, and the cases in this opinion, *supra.*

The remaining exceptions, which are not merely formal, are considered by us to be without any real merit and were not stressed in this Court.

The case has been fairly and correctly tried, and we find no reason for disturbing the judgment.

. No error.