RICHARD FREDERICK LANE, A MINOR, BY HIS NEXT FRIEND AND FATHER, RICHARD LANE, v. MALLIE J. PASCHALL, TRADING AS PASCHALL'S BAKERY, AND REUBEN KELLY.

(Filed 10 September, 1930.)

1. **Trial D a—Motion of nonsuit must be renewed at close of all evidence in order to present question of sufficiency of evidence for review.**

   In order for a defendant to have a case reviewed on appeal for insufficiency of the plaintiff's evidence, his motion as of nonsuit must be renewed at the close of all the evidence, C. S., 567, or he should in apt time offer a special prayer for an instruction directing a verdict in his favor. C. S., 565. *Semble,* in this case there was sufficient evidence to take the case to the jury. *Sutton v. Melton,* 183 N. C., 369.

2. **Trial B e—Trial court has the power to withdraw incompetent question from evidence and instruct jury that it not be considered.**

   Where on cross-examination of the defendant the counsel for the plaintiff asks an incompetent, prejudicial question, the trial court has the power in his sound discretion to grant a new trial or to withdraw the question from the evidence and instruct the jury not to consider it, and where he withdraws the question from the evidence and emphatically instructs the jury that the question not be considered, his refusal of defendant's motion for a new trial will not be held for error.

APPEAL by defendants from *Small, J.,* and a jury, at February Term, 1930, of BEAUFORT. No error.

This is an action for actionable negligence brought by plaintiff against the defendant. The evidence on the part of plaintiff was to the effect that Richard Frederick Lane, a negro boy about 16 years of age, was employed in defendant Paschall's bakery, and his work consisted of sweeping the floor and cleaning a dough brake machine. On 22 May, 1928, he was injured, and testified as to the occurrence as follows: "The machine sets in a frame with two rollers on top one another; the bottom roller was the one I had to clean. They are made out of steel. The machine was operated with electricity. There was a motor on the floor beside the machine, and had a lever on the side of the wall. I pulled the lever when I went to cut it off and put it up when I wanted to start it. Standing before the machine I could not reach the lever. In May, 1928, they had me running dough through the machine. I got $10 a week. When I was hurt the machine was in operation. I was cleaning the bottom roller. The bottom roller had to be cleaned because dough caked on it. That bottom roller has some ridges. It was my regular job to clean the machine. Mr. Kelly told me to do it. They told me to clean it when it was running. I cleaned it with a scraper. I had a regular scrape to clean it with. Mr. Kelly told me how to do it that way. I did not clean the upper roller with a scraper. The upper roller had a guard to clean it with. They told me to stand in front of the machine and to run across that roller while it was running, and that would knock the dough off. I was sixteen at the time I was hurt. I was cleaning the machine and it was running, and when I got about the middle way the first thing I knew my hand was right up between the roller. My hand was between the roller. I hollered for Mr. Kelly to come and stop the machine. When I pulled my hand out the skin was busted—hanging down. I could see the bone. My hand was straight before that time. I was carried to the hospital and was there about six weeks."

The defendant Paschall testified in part: "I told him to clean it from underneath the bottom roller. I told him two ways that it could be cleaned in perfect safety; that he could clean it from the top, providing it was not running, but if it was running it was perfectly safe to clean it from underneath. . . . There is ample room to get down under the pan and clean the roller. The switch is located within one foot of the wall and to the left of the machine. You can reach the switch when standing to the side to clean the roller. That is the scrape that we used to clean the machine at that time. It is impossible for a man's hand to get caught when cleaning the roller from underneath. I showed the plaintiff how to clean the machine before he ever scraped it. During the twelve months before he was hurt, I stopped him at least a

dozen times from cleaning the machine above the lap or pan while it was running. I got down on my knees and showed him how to do it."

The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer? Answer: No.

3. What damage, if any, is plaintiff entitled to recover by reason of the negligence of the defendant? Answer: $2,000."

*MacLean & Rodman and J. Grover Lee for plaintiff.*
*Brawley & Gantt for defendants.*

CLARKSON, J. The defendant, at the close of the plaintiff's evidence, made motion for judgment as in case of nonsuit. The motion was overruled and defendant excepted. Defendant did not renew his motion at the close of all the evidence, C. S., 567, nor did defendant, under C. S., 565, at the close of all the evidence in apt time request the court in writing to instruct the jury that in view of all the evidence the first issue should be answered "No," and the second issue "Yes." We think defendant is precluded from raising the question that the evidence on the part of the plaintiff was not sufficient to be submitted to the jury. *Penland v. Hospital, ante,* 314. Of course, this does not militate against material exceptions and assignments of error as to admission or exclusion of evidence or errors in the charge of the court. The record discloses "The judge, in his charge to the jury, gave the contentions of both plaintiff and defendants, and charged the law arising upon same." Notwithstanding the defendant has waived his right to raise the question, yet we think the evidence sufficient to be submitted to the jury. *Holt v. Mfg. Co.,* 177 N. C., 170; *Boswell v. Hosiery Mills,* 191 N. C., 549; *Mahaffey v. Furniture Lines,* 196 N. C., 810; *Mills v. Mfg. Co.,* 198 N. C., 145; *Gibson v. Cotton Mills,* 198 N. C., 267.

In *Sutton v. Melton,* 183 N. C., at p. 372, it is said: "It is the duty of a master who employs a servant in a place of danger to give him such warning and instruction as is reasonably required by his youth, inexperience, and want of capacity, and as will enable him, with the exercise of ordinary care to perform the duties of his employment with reasonable safety to himself," citing numerous authorities.

One may know the facts, yet not understand the danger and risks that threaten him. This is especially so with those of immature years. Then again, to subject a youth to cleaning a machine unguarded, knocking dough off the lower roller while in motion, a space between the

rollers that caught the dough could catch a hand in the cleaning, these are elements to be considered by the jury on the question of negligence and contributory negligence.

There is no exception and assignment of error to the charge, and it is not set out in the record, but it is admitted by the defendant and the law also presumes that the court below instructed the jury on the law applicable to the facts.

Defendants excepted and assigned error to the following cross-examination of defendant Paschall: "Q. I ask you if it isn't a fact that after this boy was hurt in your employ your insurance company canceled your insurance on the ground that you were employing too young and too cheap labor at this very machine? By the court: Gentlemen of the jury, do not consider that question at all as evidence of any kind whatever. Defendant asks that the jury be sent out at this time for a motion by defendant, and the jury is sent to their room. Defendant moved the court to withdraw a juror and declare a mistrial. By the court: Gentlemen of the jury, as to the question just asked by counsel for the plaintiff, and the court told you, gentlemen, to step into your room, the court told you not to consider it as any evidence in any way, shape or form. Dismiss it from your mind and erase it from your memory; that is your duty, and I so instruct you."

Defendant contended that it was error in the court below not to allow his motion to withdraw a juror and declare a mistrial, citing *Allen v. Garibaldi,* 187 N. C., 798. In that case the court below sustained defendant's objection, but the motion for a new trial was not requested until after verdict. The Court said, at p. 800: "Without deciding upon the merits of these opposing contentions, we think the defendant's motion for a new trial, after verdict, upon the ground stated, must be overruled. The court sustained the defendant's objection, and this was all he was asked to do at the time. There was no motion for a mistrial, or *venire de novo,* because of these alleged improper questions. Defendant elected to proceed with the trial and to take his chances with the jury as then empaneled. Indeed, it appears that counsel for both sides, during the argument, cautioned the jury to disregard the suggestion of liability insurance, as there was no evidence in the case tending to show its existence. Evidently the defendant did not consider it of sufficient importance on the trial to ask that a juror be withdrawn and a mistrial entered."

In the present case, the court not only sustained defendants' objection, but in the most emphatic language told the jury, "Dismiss it from your mind and erase it from your memory; that is your duty, and I so instruct you." We think it was in the sound discretion of the court below to either grant a new trial or charge the jury as was done. *Holt v.*

*Mfg. Co., supra; Gilland v. Stone Co.,* 189 N. C., 783; *Fulcher v. Lumber Co.,* 191 N. C., 408; *Smith v. Ritch,* 196 N. C., at p. 78.

The other exceptions and assignments of error present no new or novel proposition of law, and we think there is no merit in them. In law we find

No error.